[No. B119122. Second Dist., Div. Three. Oct. 21, 1999.]

Estate of THEODORE FAIN, Deceased.
ELEANOR FAIN et al., Petitioners and Appellants, v.
ZJAMAHL FAIN, as Special Administrator, etc., et al., Objectors and
Respondents,

974

## COUNSEL

Eleanor Fain, in pro. per., for Petitioner and Appellant.

Williams & Martinet and Leonard J. Martinet for Petitioner and Appellant Highlands Insurance Company.

Kahn, Stern & Blaney and Doyle O. Blaney for Objector and Respondent Zjamahl Fain.

Betty G. Barrington for Objector and Respondent Traci Fain.

## OPINION

**CROSKEY, J.**—In this probate matter we consider an appeal by a former administrator of the decedent's estate and her surety from a judgment imposing a surcharge of $715,000, plus interest, attorney's fees and costs. Eleanor Fain and her surety, Highlands Insurance Company (Highlands;

collectively, the appellants), seek reversal of a "Judgment After Trial" entered after a 12-day bench trial conducted by an agreed-upon retired judge. The primary issues raised are whether the trial judge was properly appointed and empowered to render a binding judgment and, if so, whether substantial evidence was presented to support it. The respondents, Zjamahl Fain, successor administrator of the estate of Theodore Fain, and Traci Fain, an heir of that estate, urge the affirmance of the judgment.

As our review of the record persuades us that this matter was properly referred to the retired judge by a *"tantamount stipulation"* of the parties, substantial evidence supports the judgment and no prejudicial procedural errors occurred, we affirm.

### Factual and Procedural Background[1]

On October 12, 1990,[2] the decedent, Theodore Fain, died intestate. He left three heirs: his children, Preston, Zjamahl and Traci. At the request of the decedent's two sons (who were then in military service), the decedent's sister, Eleanor Fain,[3] agreed to serve as administrator of the estate. She was appointed to that position by the trial court on November 29, 1990. ▮▮▮ On the same date, a bond in the sum of $1.5 million was filed with Highlands as surety. Eleanor was represented in her capacity as administrator by the law firm of Kahn, Stern & Blaney.[4] However, that firm was replaced about four months later by the firm of Rotenberg & Rotenberg. About nine months after that, Eleanor substituted herself in as counsel in propria persona.

---

[1] The relevant facts which we recite are taken from the trial judge's statement of decision or from pleadings and other documents contained in the record as to which there is no dispute.

[2] The trial judge's statement of decision recites the date as October 10 as opposed to October 12. However, the record, including the trial court's original order opening probate and appointing an administrator, states that the latter date is correct.

[3] We hereafter refer to Eleanor Fain simply as "Eleanor" and to the decedent's three children by their first names as well. We intend no undue familiarity, but adopt this method of identification as a matter of simplicity and convenience in our discussion of the background facts and the legal issues presented.

[4] It will be noted that Kahn, Stern & Blaney are counsel of record for the respondent special administrator in this appeal. However, counsel for all parties, including specifically counsel for both Eleanor and Highlands, executed a written stipulation waiving any potential conflict on or about February 10, 1995. Nonetheless, Eleanor asserted at oral argument that she never consented to the execution of such waiver by her attorney. The record does reflect that Eleanor had expressed an objection to the representation of the respondent special administrator by Kahn, Stern & Blaney in a declaration which was prepared and filed on or about September 4, 1992, by her then counsel, Bruce E. Schwartz. Thus, Mr. Schwartz is presumed to have had actual knowledge at that time of Eleanor's objection. Therefore, his subsequent execution of the stipulation in February 1995, waiving the potential conflict, was presumably done with Eleanor's approval. Certainly, knowing of such earlier objection Mr. Schwartz could not have properly executed such waiver on Eleanor's behalf without her consent. Given this state of the record, Judge Choate and the other parties and their counsel could reasonably

At the time of his death, the decedent owned both real and personal property. These assets, which included three multiple residential income properties and a single residential property, were appraised at a value in excess of $3 million. Complaining about difficulties in maintaining and managing these real properties, particularly the apartment buildings (as to which she claimed to have had difficulty in collecting rents, making repairs and meeting mortgage and other obligations), Eleanor resigned as the administrator of the estate effective March 1, 1992.[5] On April 10, 1992, the trial court, acting on the petition of Zjamahl, formally removed Eleanor as

rely on the representation by Mr. Schwartz, which is necessarily implied by his signature on the waiver, that he had obtained such consent.

In any event, we view an attorney's approval of his client's waiver of a potential conflict with the client's prior attorney as falling within the substantive rule that the lawyer must be authorized by the client to execute the waiver but, if such authority in fact was not given, the nature of this waiver is *not* so substantial that the remedy for the failure to obtain *actual* client authority should be the setting aside of the agreement. (See *In re Marriage of Helsel* (1988) 198 Cal.App.3d 332, 337-338 [243 Cal.Rptr. 657]; see also *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 406-407 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109].) In such circumstances, "the opposing party may continue to enforce the agreement [i.e., the waiver] against the client but the client then has recourse against the lawyer for acting in excess of his [or her] authority." (*In re Marriage of Helsel, supra,* 198 Cal.App.3d at p. 338.)

Finally, no argument is made by any party herein that such written waiver, executed by counsel for all parties, is not a valid and binding waiver, at least as between the parties. For all of these reasons, we do not believe that Eleanor's current objections are an impediment to enforcement of the judgment.

[5]In a letter to the mother of the heirs dated January 28, 1992, Eleanor announced her intention to resign as administrator, effective March 1, 1992. She explained her reasons for this decision in terms which reflect some of the family acrimony which has developed in this matter:

"During the past fifteen months that I have served as administratrix for the Estate of my late brother, Theodore, I have done what I could to maintain the Estate intact without allowing properties to go into foreclosure and other assets to be seized by the banks. [¶] To say the least, it has taken an heroic effort on my part and a lot of forbearance to endure the constant demands for money by creditors, repairs by city agencies and irate tenants, insults, and threats against my safety and person, not to mention the extensive hours of my time, and expenditures of my own personal resources to keep the Estate afloat. [¶] I have endured a great deal of personal, emotional and financial sacrifice in carrying out these duties. For the latter, I have received some appreciation from you and your son, Preston. From [Zjamahl], the second heir, I have received nothing more than curses, idiotic demands, ungrounded accusations, threats, and absolutely no cooperation. [¶] The last threat of a law suit against me, assumedly because I asked him to take over the management of the property, a job which I have carried out without any compensation to this point, and a responsibility I have assumed in spite of the fact that both he and Preston refused to sign an agreement granting me both the authorization to do so and promise of remuneration, is the last straw." She closed out this letter with a specific warning which apparently referred to litigation threats which she had received: "Please be forewarned: Any attempts to hold me personally liable for any matters regarding the Estate of my brother, Theodore, which have been beyond my control will be countered to the fullest extent of the law at my access. Both the Estate and all individual litigants will be named as defendants for a rather substantial sum which may very well exceed any settlement either of the heirs receives at the end of the probate of the Estate."

administrator and appointed Zjamahl as special administrator in her place with special powers "to deal with all estate property, both real and personal . . ."[6] At the same time, the court ordered Eleanor to file a final account of the estate *by no later than June 27, 1992,* "and on settlement of the account, [to] surrender the assets of the estate to Zjamahl Fain, the duly appointed and qualified special administrator of this estate."

Despite such order, Eleanor did not file any accounting by the designated date. In addition, she failed to turn over or account for assets which had been in her possession or under her control. On August 12, 1992, the court issued, at the request of Zjamahl, the special administrator, an order directed to Eleanor and requiring her to show cause why she should not be held in contempt for her failure to comply with the court's order of April 10, 1992.[7] This order was returnable on September 9, 1992, but Eleanor retained new counsel and obtained an extension.

On October 30, 1992, Eleanor filed a petition for settlement and final account of former administration, set for hearing on November 30, 1992. On

---

[6]As of April 10, 1992, the real and personal property was described in the court's order as: "[1] 1990 Lexus automobile; [¶] [2] Real property commonly known as 4040 Coco Street, City of Los Angeles, California; [3] 20 unit apartment house located at 4709 August Street, Los Angeles, California; [4] 8 unit apartment house located at 4808 and 4816 August Street, City of Los Angeles, California; and [¶] [5] Improved real property commonly known as 582 Garth Avenue, Los Angeles, California."

[7]Zjamahl's petition for the issuance of the order to show cause alleged that Eleanor not only had failed to comply with the April 10 order requiring her to file a balanced account, but also that she had purposefully and wilfully evaded service of citation documents and had wilfully disobeyed subpena duces tecum to appear and produce essential estate documents. The petition also detailed the special administrator's claims regarding missing assets as follows: "Estate assets are missing and Eleanor Fain has not delivered any assets nor estate assets to the new administrator. The petitioner is obtaining necessary information to request a surcharge against Eleanor Fain. Currently known missing assets include the following: [¶] 1. Revenue bonds valued at $35,817.26 in the inventory and appraisement have not been delivered nor accounted for. [¶] 2. Proceeds from the sale of 4808 and 4816 August Street, Los Angeles, CA (appraised at $675,000) are unaccounted for. [¶] 3. Income from apartment units located at 4040 Coco Avenue, 4709 August Street and 4808 and 4816 August Street from the date of death to the date of Ms. Fain's court removal have not been delivered nor accounted for. [¶] 4. Proceeds from estate accounts, opened after the date of death, have not been identified, delivered to the new administrator nor are they accounted for. [¶] 5. Decedent's personal furniture and furnishings which were removed from decedent's residence and have not been accounted for (a copy of an inventory is attached hereto as Exhibit B); [¶] 6. Contents of a safe deposit box which were removed and are unaccounted for [the claimed missing contents were set out in an attached exhibit]; [¶] 7. Decedent's bank accounts and other cash assets which were negligently not listed by Eleanor Fain on the court inventory and appraisement. Said assets are unaccounted for. (Eleanor Fain negligently failed to file decedent's final income tax returns. The Franchise Tax Board indicated decedent had substantial 1099 income during 1990, the year he died.) [¶] 8. A Mercedes automobile believed to have been owned by decedent but not listed on the estate inventory."

November 2, Zjamahl, as the special administrator and Traci, in her capacity as an heir, filed objections to the petition. The November 30 hearing date was continued to January 25, 1993,[8] at which time a mandatory settlement conference (MSC) was set for May 5, 1993.

At the May 5 MSC, the matter was recalendared for a voluntary settlement conference on September 15, 1993, which was later continued three separate times to August 25, 1994. On this latter date, the matter was then reset for a further MSC on November 29, 1994, but this conference was also continued two more times to July 27, 1995.[9] On this date, the probate commissioner to whom this matter had been assigned informed all counsel that the court did not have "the facilities to try this case";[10] and if counsel could not reach a mutual agreement as to a referee to try the issues relating to Eleanor's alleged (1) unbalanced account, (2) missing assets and (3) breach of fiduciary duty, then he would appoint a referee of his own choosing to try such issues. The commissioner then set a status conference for September 27, 1995 at which time the parties were to advise the court as to the name of the agreed upon private judge. *Neither Eleanor nor Highlands expressed any objection to this procedure.*

On September 26, 1995, a status conference statement was filed which stated, in part: "Counsel for the parties have conferred and agreed to use the Honorable Raymond Choate to *try* the accounting matter. January 15, 16, 17, 18 and 19 have been reserved *for the trial on the accounting issue and for determination of any appropriate surcharge against Eleanor Fain.*" (Italics added.)[11] *Neither Eleanor nor Highlands made any objection or took any exception to this statement.*

On November 15, 1995, after this matter had been set for trial before Judge Choate, Highlands, in a related case entitled Highlands Ins. Co. v. Fain (Super. Ct. L.A. County, No. BC 058540) moved for an order extending

---

[8]On January 22, 1993, Eleanor filed an amended petition in anticipation of the January 25, hearing date.

[9]We briefly recite this doubtlessly frustrating demonstration of the difficulties which parties have in trying to resolve complex probate disputes in the public court system in order to provide a context and background for their subsequent agreement to have the matter tried by a private judge.

[10]As no reporter's transcript was ever prepared in this case (at least for any proceedings which occurred prior to the decision of the retired judge which is the subject of this appeal), this quote is taken from a statement made by counsel for Eleanor.

[11]Although this status conference statement was prepared by counsel for the special administrator (as the party objecting to Eleanor's petition for approval of her final accounting), a copy was mailed to counsel for both Eleanor and Highlands. In addition, the probate notes of the trial court for September 27, 1995, reflect that the matter was "Transferred to Raymond Choate, retired Judge for hrg on 1-15-96."

attachment lien which Highlands had previously obtained against Eleanor on December 1, 1992. Highlands's counsel expressly states in an accompanying declaration: "No judgment has yet been obtained herein and the related matter [referring to this case] is presently *set for trial* on January 15, 1996." All parties agreed to reschedule the trial to August 26, 1996, in order to accommodate Judge Choate's schedule. All counsel, including counsel for Highlands, confirmed, in writing, new discovery cutoff dates for trial. On August 1, 1996, all counsel stipulated in writing to transfer of the court files from the probate court to JAMS[12] for trial before Judge Choate on August 26, 1996. Attorney Bruce Schwartz, Eleanor's counsel, signed for her and Attorney Michael Guglielmino, Highlands's counsel, signed on its behalf. On August 21, 1996, Attorney Betty Barrington (counsel for Traci), on behalf of all counsel, obtained an ex parte order to transport the file to JAMS for trial. On January 2, 1996, JAMS sent a letter to all counsel confirming that all parties had agreed to schedule a four-day *"pro tem trial."* (Italics added.) *Neither Eleanor nor Highlands expressed any objection to this notice.*

Between the date of Eleanor's removal as administrator, April 10, 1992, and the commencement of trial on August 26, 1996, the trial court had scheduled over 20 hearings to require her to file a balanced court accounting. When she finally did produce what she alleged was a proper and balanced final accounting, the newly appointed special administrator of the estate filed objections alleging that such accounting showed a shortage of more than $1 million and that estate assets were missing from her inventory.

On May 28, 1996, Sharon Miller of Mr. Blaney's office (then counsel for both objecting parties, Zjamahl and Traci) sent a letter to all counsel confirming trial cutoff dates. Highlands's counsel, Mr. Guglielmino counter-signed the letter on June 3, 1996. On August 26, 1996, immediately prior to the commencement of trial, all counsel waived a court reporter or audio recorder.[13] At no time prior to or during the trial did appellants state or contend that the proceeding was anything other than a trial. Indeed, all parties treated the proceeding as a trial. By way of further example, documents filed by Eleanor, joined into by Highlands, included: (1) "Documents to be Introduced at Time of Trial"; (2) "List of Witnesses to be Called at Time of Trial"; (3) "Trial Brief"; and (4) "Stipulation to Transfer Files to JAMS for Trial."

---

[12]"JAMS" is an acronym for Judicial Arbitration and Mediation Services, a corporation providing the services of privately retained and compensated judges, arbitrators and mediators to whom the parties have agreed to submit legal disputes for resolution. Apparently, Judge Choate was one of the retired judges associated with JAMS.

[13]It is for this reason that no reporter's transcript of the 12-day trial conducted by Judge Choate is available. This will have a dispositive impact on the appellants' insufficiency of the evidence contention.

The trial commenced on August 26, 1996, and was conducted over 12 trial days, although not consecutively. It concluded on November 19, 1996. Twenty-two witnesses were called, over 90 exhibits introduced and more than $50,000 was incurred as trial expenses and costs by the estate. On the last day of trial, all parties waived the procedural deadline for Judge Choate to render his decision due to his schedule, the upcoming holiday season and counsel's schedules.

On February 14, 1997, Judge Choate signed and caused to be mailed to counsel a document entitled "Rulings of Judge Pro Tem." In that document, he announced his decision in favor of the estate and against Eleanor. That ruling stated, in pertinent part: "Raymond Choate, Retired Judge of the said Superior court, having heard the trial of this matter of the Estate of Theodore Fain, now rules as follows: *submitted to binding arbitration as follows:*[14] [¶] 1. The Ruling is made in favor of the Estate of Theodore F. Fain, Decedent, and against Eleanor J. Fain, for the sum of $715,000.00 plus a surcharge of $7,150.00; [¶] 2. Attorney's fees are awarded to the law firm of Kahn, Stern and Blaney Attorneys at Law, in the amount of $150,000.00 plus costs expended in the lawsuit, per cost bill, of $50,000.00 for their representation of the Estate of Theodore F. Fain, against Eleanor J. Fain." (Italics added.)

Some confusion has been caused by the above italicized matter as well as by the caption of the document in which the ruling appears. That caption reads: "In the Matter of the Binding Arbitration Between." Then, where the contesting parties' names would normally be set out, the caption continues: "In the Matter of the Estate of Theodore F. Fain, a.k.a. Ted Fain." Eleanor and Highlands make much of this contradictory and confusing wording. Given the clear record before us, however, we can only conclude that a simple word processing error has occurred. The italicized matter is contradictory to what precedes it and is inconsistent with all of the acts and statements of counsel prior to issuance of this notice of ruling. As we discuss below, that the proceedings before Judge Choate were intended by the parties as a trial is really beyond argument.

This confusing reference to "binding arbitration" was brought to Judge Choate's attention at a reported hearing on March 10, 1997. Counsel for Eleanor had this to say about *his* understanding of the nature and character of the proceedings which commenced on August 26, 1996: "[Mr. Schwartz]: *So it's my understanding that we were here for trial. That's the long and short of it.* Now, how that figures into all of this, I'm not quite sure. But that's my

---

[14]It is not at all clear why this italicized matter was included. It is entirely inconsistent with the tenor of the rest of the document as well as the acts and conduct of the parties and their counsel.

recollection as to what occurred. [¶] Insofar as binding arbitration, I was never advised by anyone that this was a binding arbitration. *It was always my understanding that we are here for trial on the merits.* [¶] The Court: I thought we were here for trial and we used the term 'trial.' But sometimes it's used loosely by people who are really arbitrating. But I thought it was probably a trial." (Italics added.)

The discussion then turned to the need for a statement of decision:

"The Court: Have you offered a Statement of Decision?

"Mr. Guglielmino [counsel for Highlands]: I've demanded one, but I haven't offered a proposal yet because of the confusion over whether this was an arbitration or a trial or whether that was a ruling on an arbitration or a judgment—a tentative ruling on a judgment.

"And I requested, in light of those facts, time to prepare a Statement of Decision should The Court rule that this was indeed a trial on the merits by a pro tem rather than an arbitration.

"Of course, if your ruling is that you believe that it was an arbitration, then the rules change and our procedure changes.

"The Court: Well, I think that the former is what we did. It was a trial by a judge pro tem, and a Statement of Decision would still be required.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Mr. Guglielmino: So Statement of Decision by The Court by the 14th of April, and you will submit one back to us by the 24th?

"The Court: Yes."

Thereafter, the respondents (the estate and Traci as objecting parties) submitted a proposed statement of decision on April 13, 1997.

*However, neither Eleanor nor Highlands ever submitted one.* On March 11, 1997, Highlands sought a 30-day extension for the submission of a statement of decision, which was granted. In counsel's application for such extension, he stated: *"It is our understanding that the matter was submitted to you, as Judge Pro Tem of the Los Angeles Superior Court, for trial on the merits.* [¶] Given the extraordinary length of the trial of this matter and the voluminous amount of documentation and testimony comprising the evidence that was submitted to the court in connection with this case, Highlands intends to

assist the court by submitting proposals as to the content of the statement of decision." (Italics added.) However, counsel for Highlands never did provide that assistance and, as noted, no proposed statement of decision was ever submitted on behalf of Eleanor or Highlands.

On June 9, 1997, Judge Choate signed the statement of decision which had been submitted by counsel for the estate. In that statement, Judge Choate articulated in some detail the basis for his conclusion that Eleanor should be surcharged.[15] He concluded: "After a two week trial, the Court finds that Eleanor Fain's acts were in bad faith and that she breached the fiduciary duty owing to the estate and finds in favor of the Estate of Theodore F. Fain and against Eleanor J. Fain for the sum of $715,000, plus interest at 10%. In addition, evidence supports that the law firm of Kahn, Stern & Blaney,

---

[15]In relevant part, Judge Choate stated: "Ms. Fain failed to properly and timely comply with the court's order to file an accounting. As a result of her failure to account in a timely manner, unnecessary time, money and effort was expended by the successor administrator and/or his attorneys to compel Ms. Fain to comply with the court's order. The estate inventory had to be reconstructed; omitted assets had to be discovered and the accounting and its several amendments submitted by Eleanor Fain had to be reconstructed, corrected and reconciled.

"Ms. Fain also failed to turn over original estate records and/or documents thereby causing the estate to incur unnecessary expenses in subpoenaing records from banks and reconstructing documents for the orderly administration of the estate. Evidence established that Ms. Fain never turned over the original estate documents. During trial the Court ordered her to produce the original estate records. She failed to do so.

"As a direct result of Ms. Fain's uncooperative behavior, mismanagement and waste of estate assets, failure to turn over estate records in a timely manner, failure to properly account, failure to marshall all estate assets, failure to sell and/or liquidate estate assets in a timely manner, the administration of the estate was unduly prolonged to the detriment of the estate and resulted in unnecessary administrative costs and fees.

"When Ms. Fain failed to comply with the court order requiring her to account, Zjamahl Fain, petitioned the court to compel Ms. Fain to account and sought surcharges through their petition and also orally under [Probate Code] 1043(b) against Ms. Fain. The surcharge request was based on Ms. Fain's breach of fiduciary duties in her capacity as estate administrator to use ordinary care and diligence in managing and controlling the estate, for misfeasance, malfeasance, negligence, negligent failure to act, mismanagement of estate assets, failure to inspect estate property, failure to liquidate assets to pay estate debts, waste, mismanagement, wrongfully neglecting the estate, failure to collect estate debts, compromising claims without court approval, lost profits and bad faith failure to account to the court for over four years from the date of the court order requiring her to do so.

"*Several voluntary settlement conferences failed to yield results and the case was ordered out to a trial by a judge sitting pro tempore as confirmed by probate notes with all parties stipulating that the matter was to be heard by The Honorable Raymond. Choate.*

"It was four years from the time that Ms. Fain was ordered by the court to file an accounting that she filed a balanced accounting. Even this was not done until the first day of trial. However, even this accounting failed to make a complete and full report of administration.

"The only evidence presented by Eleanor Fain in support of her position was testimony from her mother, her aunt, her brother, a prior boyfriend who said he made repairs to the property and one of the property managers. The court finds that this evidence was insufficient to establish that there had been no breach of fiduciary duty." (Italics added.)

attorneys at law, are entitled to $150,000 of attorney fees for extraordinary services performed which services were a direct consequence of Ms. Fain's actions, plus costs of $50,000, which were expended in this lawsuit against Ms. Fain."

On July 24, 1997, Highlands filed with the trial court a document entitled "Petition To Vacate Binding Arbitration Award" and a week later, on August 1, it filed objections to the statement of decision which had been signed by Judge Choate nearly two months earlier, on June 9, 1997. After opposition to these pleadings were filed by respondents, Highlands' pleadings (along with the entire court file in this matter) was submitted to the presiding probate court judge. The issues raised by Highlands were argued by counsel on September 25 and, on November 3, 1997, the court denied Highlands' motion. In its minute order the trial court stated:

"After reviewing the court file, the Court finds that even a cursory review shows that this matter was submitted to Judge Raymond Choate for trial.

"In the Declaration of November 15, 1995, the attorney for Highlands Insurance stated, '. . . related matter is presently set for trial on January 15, 1996.'

"On August 1, 1996, the attorney for Highlands Insurance stipulated that the court file, '. . . be transferred from the Court to the Honorable Raymond Choate for trial on October 26, 1996.'

"On June 9, 1997 in a letter from Judge Choate, he said that the Statement of Decision and Judgment After Trial had been signed.

"The Court finds that based on numerous examples, three of which are stated above, this matter was submitted for trial to Judge Raymond Choate. Additionally, the Court finds that the words, 'binding arbitration' do not control over the substance of the proceedings.

"Petition to Vacate Binding Arbitration is denied."

Thereafter, on November 13, 1997, Judge Choate signed a judgment in accordance with his statement of decision. It was entitled "Judgment After Trial" and was filed on December 5, 1997.[16] Eleanor and Highlands have prosecuted this timely appeal.

---

[16]The judgment provided, in relevant part:
"IT IS ORDERED, ADJUDGED AND DECREED THAT:

## CONTENTION OF THE PARTIES

While presented in multiple articulations, the principal objection raised by appellants is that Judge Choate did not have the authority to render a binding judgment. Appellants contend that they never agreed or consented to an arbitration or Judge Choate as an arbitrator; thus, the "judgment" cannot be sustained as an arbitration award. It is appellants' view that Judge Choate was, at most, a referee appointed by the trial court, pursuant to Code of Civil Procedure section 639, subdivision (a), or under Probate Code section 11002, subdivision (b),[17] to conduct the examination and resolution of a long account; thus, Judge Choate's authority was limited to a report back to the trial judge upon such account. Appellants also contend that they did not consent to a general reference under Code of Civil Procedure section 638[18] and thus Judge Choate's action cannot be justified on that basis.

Finally, appellants argue that there was no substantial evidence to support a surcharge against Eleanor nor any factual or legal basis for the award to respondents of $200,000 in attorney's fees and costs.

Respondents, on the other hand, argue that appellants entered into an implied, if not an express, *stipulation* to have Judge Choate hear the case as a temporary judge which stipulation was approved by the trial court; as a result, the judgment, which was entered following the 12-day trial before

---

"1. $715,000 plus interest at 10% is awarded to the Estate of Theodore Fain, decedent, against Eleanor J. Fain for Ms. Fain's gross negligence and mismanagement of the Estate; and

"2. Attorneys' fees are awarded to the Law Firm of Kahn, Stern & Blaney, attorneys at law, against Eleanor J. Fain in the amount of $150,000 plus costs expended in the lawsuit of $50,000 for their representation of the Estate of Theodore F. Fain.

"Dated Nov. 13, 1997

"[/s/] Raymond Choate, Judge of the Superior Court"

[17]Code of Civil Procedure section 639, subdivision (a), provides: "When the parties do not consent, the court may, upon the application of any party, or of its own motion, direct a reference in the following cases. [¶] (a) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein."

Probate Code section 11002, subdivision (b), provides: "The court may appoint one or more referees to examine the account and make a report on the account [which has been contested on grounds set forth in Probate Code section 11001], subject to confirmation by the court. The court may allow a reasonable compensation to the referee to be paid out of the estate."

[18]Code of Civil Procedure section 638 provides, in relevant part: "A reference may be ordered upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes or in the docket, or upon the motion of a party to a written contract or lease which provides that any controversy arising therefrom shall be heard by a reference if the court finds a reference agreement exists between the parties: [¶] 1. To try any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision thereon."

Judge Choate, was procedurally proper.[19] Respondents further contend that the evidence fully supports the judgment imposing a surcharge and an attorney's fee award on Eleanor and Highlands.

## DISCUSSION

The principal issue raised by the lengthy briefs filed by the parties is really rather simple. It involves the question of whether the parties to this dispute, in effect, stipulated that Judge Choate, a retired Los Angeles Superior Court judge, could try the issues raised in the contested probate proceedings as a temporary judge. As the relevant facts are not in dispute, we resolve this question as a matter of law. (See generally, *Pennsylvania Health & Life Ins. Guaranty Assn.* v. *Superior Court* (1994) 22 Cal.App.4th 477, 480 [27 Cal.Rptr.2d 507]; *Robbins* v. *Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 [28 Cal.Rptr.2d 190].) The same is true for appellants' contentions that a surcharge and attorney's fee award could not be legally imposed. However, with respect to appellants' arguments regarding the sufficiency of the evidence, we apply a substantial evidence standard of review. Under that standard, we inquire only whether, in light of the record as a whole, there is substantial evidence to support the judgment. (See generally, *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 872-874 [197 Cal.Rptr. 925].) As we point out below, where the appellant fails to produce a complete record of oral trial proceedings, a challenge based on the claim of evidence insufficiency will not be heard. (*Construction Financial* v. *Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179 [61 Cal.Rptr.2d 574].)

### 1. *The Parties Stipulated to a Trial on the Merits by a Temporary Judge*

This record clearly demonstrates that the parties were simply unable, after over a two-year period of continuing and repeated delays, to get their contested probate proceeding tried in the superior court. The commissioner assigned to hear the matter finally urged the parties to agree on a private judge who could hear and decide the case. From a long list of private judges, the parties agreed on Judge Choate. As we have recited in some detail, the parties clearly acted and behaved as though the matter had been

---

[19]In view of the result we reach, we do not reach or consider the alternative arguments asserted by respondents with respect to such procedural propriety. For the same reason, we do not consider appellants' arguments regarding certain claimed procedural "irregularities." Their assertion that Judge Choate could not properly sign a binding statement of decision or that a court reporter was not present during the trial simply have no merit. As already noted, the representation of respondents in this matter by the law firm of Kahn, Stern & Blaney was not error as any potential conflict was expressly waived in writing by both Eleanor and Highlands (see fn. 4, *ante*).

transferred to Judge Choate *for a trial.*[20] It was not an arbitration nor a reference proceeding under the Code of Civil Procedure or the Probate Code. It was, in legal effect, a trial on the merits by a temporary judge pursuant to article VI, section 21, of the California Constitution. It is worth noting that neither Eleanor nor Highlands ever contended otherwise until *after* Judge Choate issued his statement of decision on June 9, 1997.

■ Article VI, section 21 of the California Constitution provides: " 'On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause.' [¶] Rule 244 of the California Rules of Court (hereafter rule 244) amplifies these requirements, particularly by providing for written stipulations. It provides in pertinent part: 'The stipulation of the parties litigant that a case may be tried by a temporary judge shall be in writing . . . . It shall be submitted for approval to the presiding judge or to the supervising judge of a branch court. The order designating the temporary judge shall be endorsed upon the stipulation, which shall then be filed. The temporary judge shall take and subscribe the oath of office, which shall be attached to the stipulation and order of designation, and the case shall then be assigned to the temporary judge for trial. After the oath is filed, the temporary judge may proceed with the hearing, trial and determination of the case.' " (*In re Richard S.* (1991) 54 Cal.3d 857, 861 [2 Cal.Rptr.2d 2, 819 P.2d 843].) Admittedly, these technical requirements imposed by California Rules of Court rule 244 were not met in this case.

However, it is now clear that such stipulation to a temporary judge need neither be in writing nor expressly stated. It may be *implied* from the conduct of the parties. (*In re Horton* (1991) 54 Cal.3d 82 [284 Cal.Rptr. 305, 813 P.2d 1335].) "[W]e have ratified a line of cases recognizing that a valid

---

[20]At the conclusion of the trial, after some question had been raised as to whether the judge was really acting as an arbitrator (no doubt due to the apparently erroneous wording in the judge's notice of ruling), counsel for Eleanor stated on the record (some of the *posttrial* proceedings had a court reporter present): "[I]t's my understanding that *we were here for trial. That's the long and short of it.* Now, how that figures into all of this, I'm not quite sure. But that's my recollection as to what occurred. Insofar as binding arbitration, I was never advised by anyone that was a binding arbitration. *It was always my understanding that we are here for trial on the merits.*" (Italics added.)

Later in a successful application for an extension of time in which to submit a proposed statement of decision (which he ultimately did *not* provide), counsel for Highlands represented to Judge Choate in writing: "*It is our understanding that the matter was submitted to you, as Judge Pro Tem of the Los Angeles Superior Court for Trial on the merits* . . . . Given the extraordinary length of the trial of this matter and the voluminous amount of documentation and testimony comprising the evidence that was submitted to the court in connection with this case, Highlands intends to assist the court by submitting proposals as to the proposed statement of decision." (Italics added.)

stipulation for purposes of the constitutional provision may arise as a result of the *conduct* of the parties. These cases hold that conduct short of an express oral or written stipulation may be tantamount to a stipulation that a court commissioner may sit as a temporary judge. [Citations.]" (*Id.* at p. 91 italics in original.) This principle has also been applied to a juvenile court referee (*In re Richard S., supra,* 54 Cal.3d at pp. 865-866; *In re Lamonica H.* (1990) 220 Cal.App.3d 634, 644 [270 Cal.Rptr. 60]) and to a *retired* juvenile court referee (*In re Robert S.* (1988) 197 Cal.App.3d 1260, 1265 [243 Cal.Rptr. 459]). It is also clear that the procedural requirements set out in rule 244 are *directory*, not mandatory (*In re Lamonica H., supra,* 220 Cal.App.3d at pp. 642-645 [". . . the requirements of rule 244, while obligatory, may be given only directory effect"]); thus, a written stipulation is not required by the Constitution.

As one court put it, where the acts of a referee were attacked, "Where a party to a proceeding heard by a referee has in fact expressly *or impliedly* agreed that the referee may sit as temporary judge pursuant to article VI, section 21 of the Constitution, it is difficult for us to fathom what legitimate interest the party has in the method by which his agreement is memorialized. *Whether consent is oral, written, express or implied, if in fact a party agrees to proceed before a referee and thereafter receives a ruling on the merits from the referee, his reasonable expectations have been fulfilled.* Thus the detailed procedure set forth in rule 244 appears to us designed to serve collateral interests of the judicial system. By requiring a written instrument, the rule prevents disputes as to whether parties have in fact consented and the scope of their consent. [Citation.] By further requiring the written approval of a supervising judge and an oath, the rule insures that the activities of temporary judges are monitored and do not impair the administration of the trial courts. These interests are entirely unrelated to [the litigant's] interest in having his dispute heard in a competent and unbiased tribunal." (*In re Lamonica H., supra,* 220 Cal.App.3d at p. 644, italics added.)

This commonsense approach is based on the simple proposition, as articulated by the court in *Estate of Lacy* (1975) 54 Cal.App.3d 172 [126 Cal.Rptr. 432], that "[a]n attorney may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him." (*Id.* at p. 182.) We see no reason why the foregoing authorities, which recognize and apply the so-called "tantamount stipulation" doctrine (for the appointment of a judge pro tem) to a commissioner, a referee and a retired referee would not also apply it to a retired superior court judge. To paraphrase the decision in *In re Lamonica H., supra,* 220 Cal.App.3d 634 (quoted above), which was relied upon by the Supreme Court in *In re*

*Richard S.,*[21] the services of a retired superior court judge, to which the parties have at least tacitly agreed and which are fully utilized by them through the announcement of a judgment certainly serves the interests of those parties in having their dispute heard in a competent and unbiased tribunal and their reasonable expectations have been fulfilled. "[W]hen the requirements of article VI, section 21 are otherwise met, the parties by their stipulation to trial by a referee sitting as a temporary judge, waive any claim of error on the basis of failure to strictly comply with that rule." (*In re Richard S. supra,* 54 Cal.3d at p. 866.)

It is clear as well that the doctrine of tantamount stipulation can be based entirely on the conduct of a party's attorney. (*In re Horton, supra,* 54 Cal.3d at pp. 92-93.) The facts in this case amply demonstrate that counsel for both Eleanor and Highlands repeatedly recognized and consented to the trial of the contested probate matter by Judge Choate and counsel for *all* of the parties deliberated at length before agreeing on Judge Choate to try the case. Throughout the lengthy trial there was no objection to the proceedings. Moreover, counsel filed a wide array of documents (e.g., *trial* briefs and lists of documents and witnesses to be introduced and called at *trial*). At the conclusion of the trial, counsel for *both* Eleanor and Highlands expressed the view on the record or in written court documents that they at all times understood that the matter had been submitted to Judge Choate, as a temporary judge, to try it on the merits.[22] Thereafter, the supervising probate judge, after reviewing the entire probate file, concluded that this matter had been submitted to Judge Choate for trial. In our view, the trial court's minute order of November 2, 1997, was the effective equivalent of the *post*hearing order authorizing a referee to sit as a temporary judge which was recognized by the Supreme Court as sufficient to satisfy the requirements of California Constitution, article VI, section 21. (*In re Richard S., supra,* 54 Cal.3d at pp. 865-867.)

We thus conclude that the parties entered into a stipulation that Judge Choate would try the contested probate matter as a temporary judge, that stipulation was approved by the probate commissioner and, after the fact, the supervising probate judge. Judge Choate, as a retired superior court judge, clearly met the requirement of a sworn judicial officer and was empowered to act. Thus, all of the requirements of California Constitution article VI, section 21 were met. Judge Choate was authorized—indeed required—to

---

[21]The two principal cases relied upon by Eleanor and Highlands (*In re Damian V.* (1988) 197 Cal.App.3d 933 [243 Cal.Rptr. 185] and *In re Heather P.* (1988) 203 Cal.App.3d 1214 [250 Cal.Rptr. 468] were expressly disapproved on the point for which appellants cited them. (See *In re Richard S., supra,* 54 Cal.3d at p. 866, fn. 5.)

[22]We note that counsel for appellants on this appeal is not the same as those who represented them in the trial court.

sign and file a statement of decision and a judgment. He did so and no procedural error occurred.[23]

## 2. *Substantial Evidence Supports the Surcharge and Award of Attorney's Fees*

Judge Choate was tasked to try the contested probate proceedings which arose from respondents' objections to Eleanor's proposed final account. Those objections included the alleged claims that Eleanor (1) had not submitted a balanced account, (2) could not account for missing assets and (3) had breached her fiduciary duties as administrator of the estate. These are all matters which may be the subject of a contest. (Prob. Code, § 11001.)[24] It is the court's duty to scrutinize accounts and determine all issues raised by a petition to approve any account. (See generally Ross, Cal. Practice Guide: Probate (The Rutter Group 1998) ¶¶ 16:164-16:164.1.) ■ "Objections to accountings commonly raise *surcharge* claims against their representative for purported acts of misconduct, neglect, waste, mismanagement or other breach of fiduciary duty. These grounds fall under the general category of 'all matters relating to an account' which may be contested 'for cause shown' (Prob. C. § 11001)." (*Id.* at ¶ 16:177.)

Illustrations of acts subject to surcharge are: (1) damages suffered by reason of the representative's neglect or misconduct in sale proceedings (Prob. Code, § 10380); (2) negligent failure to collect assets, causing loss to estate (*Estate of Massaglia* (1974) 38 Cal.App.3d 767, 773-775 [113 Cal.Rptr. 751]); (3) failing to diligently attempt selling depreciating estate residence (*Layton* v. *State Bar* (1990) 50 Cal.3d 889, 900-902 [268 Cal.Rptr. 845, 789 P.2d 1026]); (4) failure to liquidate assets when required to satisfy taxes, debts and administration cost (*Estate of Gerber* (1977) 73 Cal.App.3d 96, 108-110 [140 Cal.Rptr. 577]); and (5) negligent or deliberate failure to defend unjustified claims and litigation against the estate (*Estate of Mc-Sweeney* (1954) 123 Cal.App.2d 787, 794 [268 P.2d 107]).

---

[23]As already indicated, in view of this conclusion we do not reach or consider the alternative arguments for supporting or attacking Judge Choate's judgment which were advanced with such energy by the parties.

[24]Probate Code, section 11001 provides:

"All matters relating to an account may be contested for cause shown, including, but not limited to:

"(a) The validity of an allowed or approved claim not reported in a previous account and not established by judgment.

"(b) The value of property for purposes of distribution.

"(c) Actions taken by the personal representative not previously authorized or approved by the court, subject to Section 10590 (Independent Administration of Estates Act)."

Probate Code section 8800, subdivision (a), provides that the personal representative shall file with the court clerk an inventory of property to be administered in the decedent's estate. Section 8804 further provides that if the personal representative refuses or negligently fails to file an inventory and appraisal within the statutory time, the court may impose personal liability upon the representative personal representative for injury to the estate. Such liability may include attorney fees. (*Ibid.*) Damages thus awarded are a liability on the bond of the personal representative. (*Ibid.*)

In the instant case, Judge Choate concluded that Eleanor had failed to marshall all of the estate's assets and had failed to file a full and complete inventory, thereby necessitating the estate to undertake extensive discovery in order to identify estate assets. Extraordinary services performed by the administrator and its counsel in the segregation of assets, reconstruction of inventories from documents and other evidence and other problems of processing an estate which are the direct consequence of the administrator's negligence are an element of surcharge. (*Estate of Gerber, supra,* 73 Cal.App.3d at pp. 118-119.) "The elements of surcharge representing extraordinary attorney's fees and executor's commissions *not* directly related to the litigation constitute administration expenses which are ordinarily awarded upon a showing that the charges are reasonable and that the services were necessarily incurred in administration." (*Id.* at p. 118, italics in original.)

■ With these basic principles in mind we turn to appellants' contention that there is not sufficient evidence to support the judgment imposing the surcharge and award of attorney's fees. It is at this point that the parties' failure to have the 12-day trial reported becomes critical.

■ Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.* To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. (*Ehrler* v. *Ehrler* (1981) 126 Cal.App.3d 147, 153-154 [178 Cal.Rptr. 642].) The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence. (*Sui* v. *Landi* (1985) 163 Cal.App.3d 383, 385-386 [209 Cal.Rptr. 449]; *National Secretarial Service, Inc.* v. *Froehlick* (1989) 210 Cal.App.3d 510, 521-522 [258 Cal.Rptr. 506].)

■ Here Judge Choate's statement of decision reflects his findings that Eleanor (1) mismanaged estate assets, (2) allowed the assets to become

dilapidated, (3) failed to collect rents and (4) permitted the estate's income properties to be vandalized and inhabited by vagrants. Judge Choate, just by way of specific example, found from the evidence such things as: (1) "Ms. Fain's failure to inspect, repair and keep the income property located at 4808-4816 August Street, Los Angeles in a condition fit for tenant occupation resulted in a property value decrease of not less than $150,000 in a six month period." (2) "The monthly rent collection on the 4808-4816 property decreased from an average of $8,499 a month immediately prior to the decedent's death, down to $0 within three months of his death. Ms. Fain testified she made no attempt to personally collect the rent on this property nor did she hire a property manager to collect the rent. [¶] The accounting and amendments thereto filed by Eleanor Fain confirmed a loss of rental income of several hundred thousand dollars not only from the 4808-4816 August Street property, but also from all the estate income units. Testimony from Eleanor Fain further confirmed she failed to maintain adequate financial records and control of rental income collected from the estate income properties located at 4808-4816 August Street, 4709 August Street, and 4040 Coco Avenue, all in Los Angeles, California; and she failed to identify all tenants, to verify their rental agreements or rental payments or set-up any mechanism to do so." (3) "Ms. Fain failed to promptly list all estate real property for sale. When she did list property, she failed to timely communicate and cooperate with the listing brokers, failed to provide access to the property and failed to timely respond to purchase offers. . . . As a result of these acts, the estate incurred unnecessary financial loss." (4) "At the time of Ms. Fain's abandonment of the estate, [in March of 1992], the property at 4709 August Street in Los Angeles, had, according to evidence presented and testimony by Victor Pelacios, incurred between 40-42 health and safety code violations; sewers had backed up with sewage seeping under one of the apartment buildings, vagrants had overrun and destroyed many of the units making them uninhabitable and vacancies had substantially increased. [¶] The evidence presented and testimony established that as a direct result of Ms. Fain's failure to use estate monies appropriately, the estate incurred late mortgage payments penalties, foreclosure costs and forced co-insurance payments on both the 4709 August Street, 4040 Coco Avenue and the residential property."

Judge Choate concluded that, "But for Ms. Fain's gross negligence as outlined above, the estate would not have suffered the loss of several hundred thousand dollars of rental income from the estate properties and would have realized a minimum of not less than $150,000 of additional monies in the sale of the 4808-4816 August Street property. These amounts are appropriate surcharges against Ms. Fain under Probate Code section 9601(3)." He found based on all of the evidence that such surcharge should be in the sum of $715,000, plus interest at 10 percent.

In addition, Judge Choate held that, "Any extraordinary services performed by counsel which were a direct consequence of the former executor's negligence are allowed as a surcharge against the executor. . . . Here, the extraordinary services performed by the Kahn, Stern & Blaney law firm were detailed with extensive time records showing the extent of the services they had to render due to Ms. Fain's actions and inactions. Based on this evidence, and the trial costs submitted by the Kahn, Stern & Blaney firm, an award of $150,000 of attorney fees and $50,000 of trial costs are appropriate."

We find no error appearing on the face of the statement of decision or the judgment. Indeed, appellants argue only that there is "no comprehensive calculation" to demonstrate just how Judge Choate arrived at the figure of $715,000. They emphasize that this amount was more than originally sought in the respondents' pleadings. However, these objections are not fatal to the award. After 12 days of trial testimony from 22 witnesses and over 90 written exhibits, Judge Choate may well have received evidence to support the higher figure. At least, we must conclusively presume that he did so.

Appellants also attack the award of attorney's fees in the sum of $150,000 as not being justified in law or fact. As to the latter, Judge Choate stated that he received evidence that demonstrated the reasonableness and necessity of the fees charged for extraordinary services provided to the estate. Again, we must conclusively presume that such evidence was presented. Appellants' legal objection appears to rest on their assumption that the fee award was based on a finding that Eleanor had opposed respondents' objections to her final accounting in bad faith. (See Prob. Code, § 11003, subd. (b).) We do not so read Judge Choate's decision. The award was for fees incurred as the result of work on behalf of the estate which was required because of Eleanor's failure to properly discharge her fiduciary duties to the estate. Such an award is entirely justified. (*Estate of Gerber, supra,* 73 Cal.App.3d at pp. 118-119.)

Thus, given the state of the appellate record, we cannot credit appellants' extensive attacks on the factual findings and conclusions of Judge Choate's statement of decision (to which appellants did not object and to which they failed to contribute despite the grant of a requested time extension in which to do so). We must and do conclude that the statement of decision was supported by the evidence presented. That statement fully supports the judgment.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied November 10, 1999, and appellants' petitions for review by the Supreme Court were denied February 16, 2000.