Filed 3/18/24  Rigg v. Childers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALETA NANCY RIGG et al., | D081930 |
| Respondents, | |
| v. | (Super. Ct. No. EPR000744) |
| DEBORAH JUNE CHILDERS, | |
| Appellant. | |


APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Affirmed.

Cohen Law Firm and Randall A. Cohen for Appellant.

Walker & Driskill, Mitchell A. Driskell; Dube Law Office and Douglas A. Dube for Respondents.

Chhokar Law Group, David G. Greco and Kristen A. Friedman for Norma A. Hampton as Amicus Curiae.


Deborah Childers appeals from a judgment entered in favor of Aleta Nancy Rigg, Loretta Ann Catania, Michelle Mildred Black, and Randall Grant Copp (petitioners) after a two-day bench trial on their claims for return

of trust property (Prob. Code, § 850, subd. (a)),[1] imposition of a constructive trust, double damages for bad faith disposal of property belonging to trust beneficiaries (§ 859), and reasonable attorneys' fees (*ibid*.). Deborah contends that the trial court mischaracterized the real properties at issue as community property, erred in concluding the properties were trust assets, misallocated trust assets, and found bad faith on Deborah's part where it could not exist as a matter of law. We conclude that the record is inadequate for appellate review on the merits without a reporter's transcript of the trial testimony or other proper substitute. We therefore presume the trial court ruled correctly and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Carroll Childers and Judith Childers were married on February 8, 1976. Carroll and Judith each had children from prior marriages. Carroll and Judith created the Childers Family Trust (the trust) on June 6, 1996. They restated the trust on May 20, 2009.

Judith died in October 2010. Carroll married Deborah Childers in June 2012. Carroll was 86 years old when he and Deborah married. Carroll died in October 2019.

In July 2020, Judith's four children (petitioners) filed a petition for recovery of trust property, removal of Deborah as trustee, and imposition of a constructive trust. After two rounds of demurrers, petitioners filed a second

---

[1]    All further statutory references are to the Probate Code.

[2]    As we will explain, the appellate record Deborah provided is insufficient to support a complete factual and procedural summary based on the evidence admitted at trial. We therefore provide the following summary based on the pleadings, trial minute orders, and trial court's statement of decision summarizing the evidence presented at trial. We deny Deborah's request for judicial notice as unnecessary to the disposition of this appeal.

amended petition for judgment against Deborah, return of trust property, imposition of a constructive trust, and double damages under section 859.

Also in July 2020, petitioners filed a notice of pendency of action (lis pendens), asserting that the petition they had filed earlier in the month affected title to or the right to possess two of the properties they claimed belonged to the trust. The two properties were referred to throughout the litigation as the Wixom house and the Dogwood property. Deborah filed a motion to expunge the lis pendens in March 2022. In April 2022, the trial court granted Deborah's motion and expunged the lis pendens as to the Wixom house and Dogwood property. In September 2022, two months before trial, Deborah sold the Dogwood property for $600,000.

A bench trial was held over the course of two days in October and November 2022. Petitioners Copp, Black, and Catania testified, as did Deborah. Phillip Krum, an attorney and certified specialist in estate planning, trust, and probate law who advised Carroll regarding the trust and its assets, and Thomas Brundy, who purchased a property from Carroll in 2017, also testified on behalf of petitioners.

At the close of testimony, Deborah's counsel requested a statement of decision. The trial court directed counsel for both sides to prepare a proposed statement of decision. The court then issued its tentative decision, after which the parties had 15 days to file objections. Deborah filed objections, and the court requested supplemental briefing.

The trial court issued its final statement of decision in February 2023, stating that it was "satisfied all issues necessary for the Court to make its decision have been addressed in this Statement of Decision." In its statement of decision, the court briefly summarized the relevant testimony of the six

3

witnesses and noted that it found all of the witnesses to be credible except Deborah.

The court first summarized Krum's testimony and found him to be an expert in his area of specialty. According to the statement of decision, Krum testified that he advised Carroll on matters relating to the trust in 2014 and told him that after Judith died, the trust required him to allocate the trust properties into two sub-trusts—one for Judith as the decedent and one for Carroll as the survivor. The court found that Krum advised Carroll that he could not use the principal of Judith's sub-trust until he exhausted all assets in his own sub-trust. Krum further advised Carroll that he could not revoke or amend the trust in any way that would change the beneficial interests of Judith's sub-trust.

In summarizing Deborah's testimony, the trial court stated that it found her to be evasive and that she lacked credibility. In particular, the court found Deborah's lack of recollection relating to the rental payments on one of the trust properties and the sale of the Dogwood property to lack credibility. On the latter, the court noted that although Deborah testified there was no money left from the $600,000 proceeds from the sale, tens of thousands of dollars appeared to be unaccounted for, and her inability to account for that money was not credible. The court further found she had failed to respond to petitioners' request to produce records showing income and expenses, and the incomplete documentation of expenses she brought to trial, without backup or receipts, was not credible. Deborah also testified that Carroll directed her to write the February 2019 amendment to the trust, and the trial court found that her testimony regarding the purported trust amendment lacked credibility. It further found Carroll's signature on the trust amendment to be "suspect."

4

The trial court took judicial notice of: (1) a petition filed in April 2011 on Carroll's behalf that transferred the Wixom house and a property referred to throughout the litigation as Farm Parcel 3 to the trust; (2) public records admitted as trial exhibits showing that, after Judith died, Carroll sold or transferred to third parties several different properties; and (3) public records admitted as trial exhibits showing that Carroll transferred the Dogwood property, the Wixom house, and Farm Parcel 3 to himself and Deborah as joint tenants.

The court then made several findings of fact. It concluded that the Dogwood property, the Wixom house, and Farm Parcel 3, among others, were all properties of the trust and were also community property. The court found that at the time of Judith's death, the total value of the trust properties was $2,862,570, and upon her death, $1,431,285 should have been allocated to her sub-trust. However, Carroll failed to allocate any assets to Judith's sub-trust. The court further concluded that Carroll had transferred or sold more than half of the value of the trust. Given that Carroll was required to exhaust his survivor's sub-trust before he was permitted to access the principal of Judith's sub-trust, the court found that all of the remaining properties must belong to Judith's sub-trust.

The court further found that Deborah's sale of the Dogwood property during litigation was in bad faith and the $600,000 in proceeds from the sale should have been allocated to Judith's sub-trust. It ultimately found that Deborah was wrongfully holding the title to the Wixom house and Farm Parcel 3, any rent accruing from those properties, and any remaining proceeds from the sale of the Dogwood property, and she therefore held all such property in constructive trust for the trust and petitioners. Finally, the court concluded that Carroll sold and transferred the trust properties after

5

his marriage to Deborah and that this invasion of the principal of Judith's sub-trust was done to benefit Deborah and himself for reasons other than those allowed by the trust.

Based on its findings of fact, the trial court found in favor of petitioners and against Deborah for all claims alleged in the second amended petition. The court ordered Deborah to execute quitclaim deeds for the Wixom house and Farm Parcel 3 transferring title to Catania, whom the court appointed as successor trustee, for the benefit of petitioners. The court further ordered Deborah to assign any and all rights to rents from Farm Parcel 3 to Catania for the benefit of petitioners. It also awarded Catania double damages in the amount of $1,200,000 and attorneys' fees under section 859, for Deborah's bad faith sale of the Dogwood property.

Deborah timely filed a notice of appeal.[3]

---

[3] We granted an application from Norma A. Hampton to file an amicus curiae brief. She argues that because she owns a partial interest in Farm Parcel 3 and is an indispensable party but received no notice of the proceedings below, no relief granted by this court or the trial court can affect her property interest. We decline to consider her argument, which is not among the contentions raised by the parties. (*California Manufacturers & Technology Assn. v. State Water Resources Control Bd.* (2021) 64 Cal.App.5th 266, 278, fn. 8 ["[A]n appellate court will consider only those questions properly raised by the appealing parties. Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered." (internal quotation marks omitted)]; see also *Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 462 [" 'The granting of leave to appear as amici curiae is not the full equivalent of intervention, for amici curiae are confined to legal argument, cannot plead or offer evidence, and cannot appeal from an adverse decision.' "].) We deny Hampton's request for judicial notice for the same reasons. In any event, the trial court's judgment is not suspect merely because Norma now claims to be an indispensable party not included in the proceedings below. The failure to join allegedly indispensable parties does not deprive a court of the power to make a legally binding adjudication

Deborah contends that the trial court erred in concluding that the Wixom house, the Dogwood property, and Farm Parcel 3 were assets of the trust and were community property. She argues that the Wixom house and Farm Parcel 3 were Carroll's separate property acquired before marriage, and the Dogwood property was held in joint tenancy and never conveyed to the trust, so it became Carroll's sole property upon Judith's death. She further argues that Carroll had the right to invade the principal of Judith's sub-trust, and the trial court's conclusion that Carroll did not do so for his health and welfare, which would have been allowed under the trust, was in error.

Fatal to Deborah's arguments is her failure to provide a reporter's transcript or suitable substitute of the trial proceedings, and we conclude that the absence of an adequate record on appeal precludes a finding of error. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 (*Foust*) [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' "]; see also *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977 ["Without a complete record, we are unable to determine whether substantial evidence supported the implied findings underlying the trial court's order."].) As the Supreme Court has explained, "the absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court. This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to

---

between parties properly before it. (*Golden Rain Foundation v. Franz* (2008) 163 Cal.App.4th 1141, 1155.)

be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) "To put it another way, *it is presumed that the unreported trial testimony would demonstrate the absence of error.*" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics added [affirming judgment after trial].)

"In numerous situations," therefore, "appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust, supra*, 198 Cal.App.4th at p. 186, citing cases [affirming judgment after trial on breach of contract claim where appellant failed to provide reporter's transcript or other adequate statement of the evidence presented during trial]; see also *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [concluding that appellant had forfeited any challenge to the order compelling arbitration due to his failure to provide an adequate record of testimony and documentary evidence offered during 16-day hearing].) Although courts may exercise their discretion to resolve the appeal on its merits without a reporter's transcript, this is generally only where the appeal does not involve live testimony or other evidentiary matters. (See, e.g., *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090 ["But [respondent] does not argue the hearing included any live testimony or additional evidence. Because we independently review the trial court's order denying the housing corporation's motion to compel arbitration and the record before us includes all evidence considered by the trial court, a reporter's transcript is not necessary."]; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933 ["Bel Air does not claim that the hearing

8

included any live testimony or the introduction of any other evidence."];
*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699 [the court would review record without transcript in part because it had "no indication that witnesses testified or evidentiary issues arose at the hearing"].)

Here, by contrast, Deborah asks us to resolve several issues that were decided by the trial court after hearing the testimony of six witnesses at a two-day trial. Although Deborah does not rely on testimony or raise explicit sufficiency of the evidence arguments, the issues she raises all involve evidentiary considerations. For example, Deborah argues the court "*made assumptions not supported by the evidence,* . . . misallocated trust assets, and unfairly and improperly ordered the conveyance of property from decedent's wife to decedent's trust of which decedent's step-children were the beneficiaries." (Italics added.) We cannot determine whether the trial court made assumptions not supported by the evidence if we do not have all of the evidence before us. And although Deborah is correct that appellate courts independently review the interpretation of a contract or other document "absent the admission of extrinsic evidence," without a complete record, we cannot know whether extrinsic evidence was considered by the trial court.

We ordered the parties to provide supplemental briefing on this issue. According to Deborah, her arguments on appeal do not require consideration of the oral proceedings in the trial court and instead "require only a legal evaluation of whether the trial court's conclusions are consistent with the documents presented as evidence." She therefore contends that the record before us is adequate to determine whether the trial court erred as to each of the issues she raises. We do not agree.

Deborah first contends that the trial court erroneously concluded, "based solely on language in the trust, [and] not on any other evidence

9

presented," that the Wixom house and Farm Parcel 3 were separate property before conveyance into the trust but became community property upon that transfer. As an initial matter, Deborah mischaracterizes the court's conclusion on this point, which was not necessarily that the Wixom house and Farm Parcel 3 were separate property—the court stated that, "regardless of [the properties'] character before it was transferred into the trust, [it] became trust property when transferred into the trust and [was] deemed to be community property." But more importantly, we cannot conclude that the trial court made this finding based solely on language in the trust. The court did not say so in its statement of decision.[4] Although the court stated that the May 20, 2009 Restatement of the trust "answers the question [of the properties' character] on its face," it did not refer to the document as the sole support for its conclusion. In fact, the court provided additional reasons in support of its finding that the two properties became community property upon conveyance into the trust, including Carroll's decision to petition the transfer of the properties into the trust rather than doing so with a simple quitclaim deed. A record of the testimony received at trial may not be relevant to this issue, but there is no way for us to determine that to be true.

Deborah's next argument on appeal is that the Dogwood property was held in joint tenancy by Carroll and Judith and was never owned by the trust. She contends that the exhibits introduced at trial support her argument but that the trial court erroneously concluded the Dogwood property was in the trust "based solely on the fact that it was listed in a

---

4    Nor was it required to do so. "[A] statement of decision need do no more than state the grounds upon which the judgment rests, *without necessarily specifying the particular evidence considered by the trial court in reaching its decision.*" (*Richardson v. Franc* (2015) 233 Cal.App.4th 744, 753, fn. 2, italics added and internal quotation marks omitted (*Richardson*).)

distributive provision in the trust document." Again, we have no way to confirm the accuracy of this assertion. The trial court did not make any such statement in its decision, nor was it required to list every fact supporting its conclusion. (See *Richardson, supra*, 233 Cal.App.4th at p. 753, fn. 2.)

Deborah similarly asserts that the trial court made its findings regarding the proper allocation of property to Carroll's and Judith's sub-trusts based solely on the documents presented at trial rather than any testimony, and she contends a transcript of the trial testimony is therefore "irrelevant and unnecessary." We are unpersuaded by this for the same reasons we have already explained.

Deborah argues that to determine the character of real property upon the death of a spouse, there is a rebuttable presumption that the character of the property is as stated in the deed, and the burden is on the party seeking to rebut that presumption to establish that the property is held in some other way. Again, we cannot determine whether petitioners sufficiently rebutted this presumption without a complete record, as it is possible testimony was presented related to this issue that the trial court took into consideration. Indeed, petitioners contend that Krum testified about this issue, and their contention is supported by the trial court's summary of Krum's testimony in the statement of decision. We also do not know what, if any, testimony was presented regarding the purpose of Carroll's invasion of the principal of Judith's sub-trust and whether it was proper under the terms of the trust. Although Deborah claims the trial court's conclusion that there was no evidence Carroll invaded the principal of Judith's sub-trust for permissible reasons is "nonsensical," we cannot reach the same conclusion without a complete record. As with Deborah's other contentions, we must presume the

11

unreported trial testimony would support the trial court's findings. (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.)

Deborah's final argument is that the trial court erred in finding that she acted in bad faith when she sold the Dogwood property. Unlike the other issues she raises on appeal, however, she does not assert that the trial court decided this claim based solely on the documents.

Although in certain cases the issue of bad faith could be decided as a matter of law, we conclude that this is not one of them. Deborah asserts that "the court identifies no facts in its final [statement of] decision to support the conclusion that the sale was in bad faith" and that "[a]lthough the court did not find her testimony credible, there is nothing in her testimony (*as stated in the court's decision*) regarding the circumstances surrounding the sale of the Dogwood Property." (Italics added.) But, as we have explained, the trial court was not required to include all facts it considered or relied on in its statement of decision. (*Richardson, supra*, 233 Cal.App.4th at p. 753, fn. 2; see also *Duarte Nursery, Inc. v. California Grape Rootstock Improvement Com.* (2015) 239 Cal.App.4th 1000, 1012 ["A court's statement of decision need not respond to every point raised by a party or make an express finding of fact on each contested factual matter; it need only dispose of all basic issues and fairly disclose the court's determination as to ultimate facts and material issues in the case."].) Without a transcript or settled statement, we must presume all facts in favor of the judgment (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992), and we cannot say there are no possible facts that could support the trial court's bad faith finding. Moreover, the statement of decision indicates that Deborah *did* testify regarding the sale of the Dogwood property, which supports the conclusion that there was evidence presented at trial relevant to the bad faith issue that is not in the record before us. Under

12

these circumstances, the lack of record of trial testimony is fatal to Deborah's ability to have her claim resolved on the merits. (*Jameson, supra*, 5 Cal.5th at p. 608.)

In sum, we conclude Deborah has failed to meet her burden in showing any error in the trial court's decision.

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.