Filed 9/30/20  Bugbee v. Ford CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT BUGBEE,<br><br>        Plaintiff, Cross-Defendant and Appellant,<br><br>v.<br><br>MARY DAWN FORD, as Trustee, etc.<br><br>        Defendant, Cross-Complainant and Respondent. | A158849<br><br>(Humboldt County<br>Super. Ct. Nos. PR180250,<br>CV190046) |

Plaintiff Robert Bugbee and decedent Joann M. McKenzie had been in a nonmarital, cohabitating relationship for 22 years when McKenzie died. Bugbee filed a petition seeking reimbursement for money he spent on home improvement and maintenance, car acquisition and maintenance, and vacations during their relationship, and defendant Mary Dawn Ford filed a cross-complaint against Bugbee for ejectment and wrongful occupation of McKenzie's house.  Following a court trial, judgment was entered in favor of Ford.

Bugbee's appellate briefing is not a model of clarity, but it appears his arguments are that the trial court failed to rule on his petition brought under

1

Probate Code[1] section 850 and that the trial court improperly awarded respondent damages for wrongful occupation of McKenzie's house.[2]

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

*Petition*

On October 23, 2018, Bugbee filed a "petition pursuant to Probate Code section 850, et seq.; and related civil causes of action" against Ford as successor trustee of the Joann M. McKenzie 2016 trust (McKenzie trust) and/or as personal representative of the estate of Joann M. McKenzie seeking, among other things, payment "for all expenses made on behalf of" McKenzie by Bugbee and a determination that Ford "breached the oral contract entered between [McKenzie] and [Bugbee]." Ford is McKenzie's daughter.

Bugbee alleged the following. He and McKenzie were in a relationship for more than 20 years "of mutual caring and support, sharing their lives together." When they began their relationship, McKenzie's house on Anderson Avenue in McKinleyville (Anderson house) "was in dire need of maintenance, basic repairs and remodel." Bugbee offered to pay for home improvements, and McKenzie "agreed that all money spent by Petitioner would be paid back." For over 22 years, Bugbee paid nearly all maintenance, repair, and remodel costs for the Anderson house. "[U]nder the same

---

[1] Further undesignated statutory references are to the Probate Code.

[2] The opening brief reports that Bugbee died shortly after entry of judgment. We retain the original case title because we have not received a request for substitution. (See *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743, 745–746, fn. 3.)

2

agreement," Bugbee paid for nearly all of McKenzie's vehicle expenses (including buying a car) and extended trips to Hawaii and Arizona.

McKenzie died on July 25, 2018. On October 4, 2018, Ford, as trustee of the McKenzie trust, caused to be served a "Notice of Landlord's Intention to Enter Dwelling Unit-To: Tenant at Will, Robert Bugbee" for the Anderson house.

Bugbee alleged, "the amounts he spent on behalf of decedent to correct deferred home maintenance, make improvements, as well as provide a vehicle for decedent, and decedent's travel costs, upon decedent's death, are not assets of decedent's trust or estate, but belong to" Bugbee, citing section 850, subdivision (a)(3)(A).

Bugbee asserted claims of (1) breach of contract, based on an alleged oral or implied-in-fact contract, the terms of which were that Bugbee "agreed to pay expenses alleged herein so that [McKenzie] could enjoy all benefits during her lifetime, to be reimbursed only following [McKenzie]'s death"; (2) negligent misrepresentation, based on the allegation that McKenzie "represented to [Bugbee] that he or his estate, depending on the circumstances, would be reimbursed for all of his expenditures in the house, car, and travel, after [McKenzie's] death, as alleged herein"; and (3) false promise, based on allegations McKenzie "made promises to [Bugbee] that [he] would be reimbursed for expenditures made on [her] behalf," which Bugbee reasonably relied on.

He also alleged that he was 90 years old and that Ford had "wrongfully taken, or concealed, or disposed of property belonging to" him through the commission of elder financial abuse.

3

Bugbee later added a fourth claim for "constructive trust," alleging he had "equitable title interest" in the Anderson house based on his investment in maintaining the property for 22 years.

*Cross-Complaint*

On April 15, 2019, Ford file a cross-complaint for ejectment and wrongful occupation damages. She alleged as follows. McKenzie owned the Anderson house, first as an individual and later as trustee of the McKenzie trust, and the Anderson house was devised to the beneficiaries of the McKenzie trust.

Since approximately 1996, Bugbee lived with McKenzie in the Anderson house "rent-free and with virtually no contribution to monthly utility bills, as an at-will tenant," in his "capacity as [McKenzie]'s boyfriend." Ford alleged that Bugbee acknowledged in his deposition of February 7, 2019, that he had no agreement with McKenzie allowing him to reside in the Anderson house following McKenzie's death, but he continued to wrongfully occupy the house.

*Trial*

A court trial was held on June 3–4, 17–19, and 27, 2019. There is no transcript of the trial in the record on appeal. According to Ford, Bugbee failed to arrange for a court reporter.

The parties submitted trial briefs.

In his trial brief, Bugbee asserted his action was for recovery of his "separate property," and cited *Marvin v. Marvin* (1976) 18 Cal.3d 660 (*Marvin*) and *Estate of Black* (1984) 160 Cal.App.3d 582.[3]

---

[3] Bugbee quoted *Estate of Black* for its description of *Marvin*: "In the *Marvin* decision, the California Supreme Court held that a party to a nonmarital living arrangement may be entitled to enforce property rights based upon express or implied in-fact agreement with the cohabitant, and

4

Bugbee argued Ford held "only bare legal title to" the Anderson house "against the equitable title interest petitioner gained by his separate property expenditures." He claimed evidence would show he spent $182,365.86 on home repair and improvements, $70,357.78 for McKenzie's vehicle, a Cadillac, and $43,007.91 on McKenzie's trips/vacations.[4]

In her trial brief, Ford asserted McKenzie and her husband acquired the Anderson house in the 1960's, and McKenzie became the sole owner of the house upon her husband's death in 1994. She argued Bugbee's claim for continued possession of the Anderson house failed as a matter of law because the alleged oral or implied contract was for monetary reimbursement only and because any claim to real property based on an unwritten contract would violate the statute of frauds. Ford asserted evidence would show that she gave Bugbee 60 days from September 1, 2018, to surrender the house, so holdover damages for rent should accrue beginning November 1, 2018. She further sought tort damages and attorney's fees.

*Statement of Decision*

The trial court's "Statement of Decision After Court Trial" was filed August 23, 2019; it ran to 14 pages. The court found the following facts.

In 1996, Bugbee moved into the Anderson house. The house was undergoing significant remodeling before and after he moved in. Bugbee partly paid for remodeling the house in the mid-to-late '90's. After the remodel was completed in the late '90's, McKenzie and Bugbee were very

---

that other equitable remedies may be available to protect the reasonable expectations of a nonmarital partner." (160 Cal.App.3d at p. 584, fn. 2.)

[4] Bugbee also asserted he spent a minimum of $278,292.54 on joint living expenses; he characterized this spending as a "gift to the community."

5

pleased with the Anderson house, and McKenzie "stated that this was a house she and Mr. Bugbee 'could live in for the rest of their lives.' "

At all times, legal title to the Anderson house was held in McKenzie's name or in the name of her trust. Bugbee knew title to the house was in McKenzie's name and later in the name of her trust, and they never talked about adding Bugbee to the title or placing a lien on the house in Bugbee's favor.

During their 22-year relationship, Bugbee paid for many but not all household expenses from which both he and McKenzie benefitted. He paid for many vacations and trips they took together. Bugbee did not pay rent, insurance, or property taxes while living at the Anderson house. He and McKenzie did not have a joint bank account and did not commingle funds.

Bugbee and McKenzie often presented themselves to the public as husband and wife and wore wedding rings, but they never married or registered as domestic partners. Together, they made the deliberate decision not to marry, so McKenzie's pension benefits would not be reduced. They talked with each other about various financial decisions during their relationship. Bugbee bought a Cadillac that was primarily for McKenzie's use. Bugbee and McKenzie held title to the car as joint tenants, and title passed to Bugbee upon McKenzie's death.

In 2016, Bugbee knew McKenzie was preparing her estate plan; he did not ask McKenzie to include him or the purported debt she owed him in her estate plan. In 2016, McKenzie established a trust, of which she was the trustee, and executed a pour-over will. Bugbee was not a beneficiary of the trust, and "he was not an heir to [her] estate." The trust included the direction that the Anderson house was to be sold within 60 days of her death

with the proceeds to be divided among the beneficiaries. Ford became trustee upon McKenzie's death.

McKenzie did not ask Bugbee to pay for remodeling expenses, household expenses, vacation or vehicle costs, and McKenzie "did not agree or promise to repay" Bugbee for these expenditures either. McKenzie did not promise or agree that Bugbee could live in the Anderson house after her death. The current fair market rental value of the house is $2,500 per month.

The court reached the following conclusions of law.

McKenzie did not make any promises to Bugbee and did not undertake any obligations to him sufficient to constitute either an oral contract or an implied-in-fact contract. The court noted that the only evidence that McKenzie understood Bugbee was making a loan that she was obligated to repay was Bugbee's testimony, and he had an obvious bias. There was no corroborating evidence and "insufficient evidence regarding the terms of the loan, the total amount of the loan, or the interest rate to be charged, if any."

There was likewise "insufficient evidence from which to conclude there was a tacit understanding between Mr. Bugbee and Ms. McKenzie regarding repayment or living in the house after Ms. McKenzie's death" to support a *Marvin* (*supra*, 18 Cal.3d 660) claim.

"As to a claim in *quantum meruit*, assuming that 'household services' could include payment of household expenses, travel, and remodeling, Mr. Bugbee failed to introduce sufficient evidence that his financial contributions exceeded the value of what he received (such as 22 years of staying in the house rent-free)."

7

As to a property claim in the Anderson house, the evidence was insufficient to rebut the presumption that McKenzie had sole ownership of the house.

There was no evidence Bugbee and McKenzie entered into a pooling or asset-sharing agreement. Instead, the court found their "treatment of their expenses [wa]s consistent with an intent to preserve economic independence."

Although Bugbee argued he was entitled to return of his "separate property," the trial court wrote that he cited no authority for the proposition that "separate property" "is a doctrine that applies outside of marital/registered domestic partner relationships, nor has the Court located any such authority. There is no corollary to the family law doctrines of community property and separate property in a non-marital relationship."

The trial court explained, "Absent a marital or registered domestic relationship, any judgment in favor of a non-marital cohabitant 'must be supported by some recognized underlying obligation in law or in equity. A court of equity admittedly has broad powers, but it may not create totally new substantive rights under the guise of doing equity,' " quoting *Marvin v. Marvin* (1981) 122 Cal.App.3d 871, 876.

Concluding its legal findings in respect to "Marvin Claims and Equitable Relief," the court observed that Bugbee's expenditures looked like gifts and ruled that Bugbee failed to prove his claims. "[T]he evidence of Mr. Bugbee's generosity towards Ms. McKenzie, his deep emotional connection with Ms. McKenzie and her family, and the complete lack of corroborating evidence that Ms. McKenzie voluntarily undertook an obligation to repay Mr. Bugbee, supports a conclusion that the monies Mr. Bugbee spent during the relationship were gifts. Civ. Code § 1146 ('A gift is a transfer of personal property, made voluntarily, and without consideration'); *Burkle v. Burkle*

8

(2006) 141 Cal.App.4th 1029, 1037–1038 (in the absence of any evidence of the terms of a purported loan, and the failure to tell the alleged borrower that the funds were a loan that the borrower would be obligated to repay with interest, and the lack of any agreement to loan terms, a trier of fact could reasonably infer that the purported lender intended to gift the funds); [citation]. However, it was not Respondent's burden to show what the transactions were (gift or otherwise). Instead, Petitioner [Bugbee] had the burden to show that the transactions, however characterized, included an obligation by Ms. McKenzie to return the funds Mr. Bugbee spent while cohabitating with Ms. McKenzie, or otherwise gave him the right to stay in the house after Ms. McKenzie's death. The Court concludes Petitioner failed to meet his burden."

The court went on to find insufficient evidence to show negligent misrepresentation or false promise. It found Bugbee failed to establish a claim for elder abuse and failed to prove Ford engaged in bad faith or fraudulent activities.

The court found in favor of Ford on her cross-complaint. It found Bugbee failed to show any legal or equitable right to remain in the Anderson house, and ordered Bugbee to pay the trust rent at $2,500 per month from November 1, 2018, up to the date of entry of judgment, then post-judgment daily rent at $82.19 per day until Bugbee vacated the property.

## DISCUSSION

A fundamental principle of appellate review is that "the trial court's judgment is presumptively correct, such that error must be affirmatively demonstrated, and where the record is silent the reviewing court will indulge all reasonable inferences in support of the judgment. [Citations.] This means that an appellant must do more than assert error and leave it to the

9

appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record. [Citations.] . . . [O]rdinarily, errors not reflected in the trial record will not, and indeed cannot, sustain a reversal on appeal." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557.)

"Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

With these principles in mind, we consider Bugbee's appellate claims.

A.  *Determination of Bugbee's Section 850 Petition*

Under section 850, subdivision (a)(3)(A), an interested person may file a petition "[w]here the trustee is in possession of, or holds title to, real or personal property, and the property, or some interest, is claimed to belong to another." (§ 850, subd. (a)(3)(A).)

Bugbee argues the court's statement of decision "applied only to the related civil actions pled, not to [his] vested legal constitutional right to reimbursement of his own separate property sought in the Probate Code section 850 Petition." Bugbee's arguments are difficult to follow, and we discern no merit to them.

To the extent Bugbee believes he could be entitled to a monetary award or property interest in the Anderson house under section 850 independent of

10

his legal theories for recovery (breach of contract, negligent misrepresentation, false promise, constructive trust/"equitable title interest"), he is mistaken. The trial court addressed Bugbee's apparent misunderstanding in its statement of decision: "Probate Code section 850 *et seq.* does not create independent substantive rights, but instead establishes who has standing to bring a claim in probate, and a mechanism to enforce substantive rights in a probate proceeding." The trial court cited *Estate of Kraus* (2010) 184 Cal.App.4th 103, 117–118, which explained that section 850 et seq. "provides the probate court with a *mechanism* to determine rights in property belonging to a decedent or to someone else." (Italics added.) Section 850 does not provide a substantive property right.

To the extent Bugbee's argument is instead that the trial court failed to address his "separate property" theory for recovery, he is also mistaken. The trial court clearly addressed this theory, explaining to Bugbee that the concept of "separate property" (and, we note, the related concept of "community property") does not apply "outside of marital/registered domestic partner relationships."[5]

Under a separate argument heading, Bugbee asserts he "is entitled to the same legal protections as if there was a marriage certificate." He cites no legal authority for his position. He relies on Family Code section 2640 for the claim that he should be reimbursed for his payments for home improvements

---

[5] At oral argument, Bugbee's attorney urged that Bugbee had a right to recover his "separate property" under article 1, section 1 of the California Constitution, which recognizes all people have inalienable rights including "acquiring, possessing, and protecting property." Bugbee is claiming that money he spent over more than 20 years should be repaid by McKenzie's estate. Bugbee needs a legal theory for why this should be so, and a sweeping reference to property rights will not suffice.

from his "separate property."[6] But our high court held in *Marvin*, "The provisions of the Family Law Act do not govern the distribution of property acquired during a nonmarital relationship; such a relationship remains subject solely to judicial decision." (*Marvin*, *supra*, 18 Cal.3d at p. 665; see *Lanz v. Goldstone* (2015) 243 Cal.App.4th 441, 465 [noting this holding has been "confirmed many times since" *Marvin*].)

Elsewhere, Bugbee refers to his own testimony, suggesting the trial court was *required* to accept his testimony as true. This appears to be a claim that insufficient evidence supported the trial court's judgment. But the absence of a reporter's transcript in this case precludes an appellate argument as to the sufficiency of the evidence. (*Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) Moreover, "[a] trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043.) Here, the trial court explained that it found Bugbee's testimony insufficient to prove a contract existed because of his obvious bias.

Bugbee also argues he did not make a gift of his property to McKenzie as a matter of law. Again, however, he refers to his testimony ("it is clear from Petitioner's testimony at trial"), but the absence of a reporter's transcript is fatal to this argument. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186 [where the appellant argued "his trial testimony was clear" on a point of contention, the "fatal problem" with the

---

[6] Family Code section 2640, subdivision (c), provides, "A party shall be reimbursed for the party's separate property contributions to the acquisition of property of the other spouse's separate property estate during the marriage, unless there has been a transmutation in writing pursuant to Chapter 5 (commencing with Section 850) of Part 2 of Division 4, or a written waiver of the right to reimbursement."

appeal was his failure to provide reporter's transcript or any other adequate statement of the evidence].)

Finally, Bugbee contends the trial court misapplied the financial elder abuse law. This contention is premised on his claim that the trial court failed to recognize his "absolute right to recover his separate property expenditures." But, as we have seen, his "separate property" claim fails because the Family Law Act does not govern the distribution of property acquired during a nonmarital relationship. (*Marvin, supra,* 18 Cal.3d at p. 665.) Since the premise of his claim fails, Bugbee's elder abuse appellate claim must fail, as well.

In short, Bugbee has not shown error in the trial court's determination of his section 850 petition.

B.    *Ejectment and Wrongful Occupation Damages*

Next, Bugbee asserts the trial court improperly awarded respondent Ford rent for occupying the Anderson house beginning November 1, 2018. He argues he was not a tenant and he "had a legal protected interest" in the Anderson house.

Like his elder abuse appellate argument, his challenge to the damages award fails because the premise of his challenge fails. The trial court rejected Bugbee's claim to a property interest in the Anderson house, and he has shown no error in that determination.

Bugbee cites Civil Code section 3335 on willful holding over, but we are at a loss to understand the relevance of the statute to this case.[7] Bugbee does not hold a life estate and is not a trustee or the guardian of a minor.

---

[7] Civil Code section 3335 provides, "For willfully holding over real property, by a person who entered upon the same, as guardian or trustee for an infant, or by right of an estate terminable with any life or lives, after the termination of the trust or particular estate, without the consent of the party

13

Bugbee has not shown error in the trial court's determination of Ford's cross-complaint.[8]

Ford asks for sanctions in her respondent's brief, but her request is not supported by a declaration supporting the amount sought. (Cal. Rules of Court, rule 8.276(b)(1).) We deny Ford's request for sanctions.

## DISPOSITION

The judgment is affirmed.

---

immediately entitled after such termination, the measure of damages is the value of the profits received during such holding over."

[8] Ford filed an objection to Bugbee's reply on the ground it was untimely filed. We accepted the filing of the reply brief, but do not consider issues raised for the first time in the reply brief. (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 350.) Thus, we do not consider Bugbee's suggestion that he should be treated as a "good faith improver" or his citation to Civil Code section 741.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A158849, *Bugbee v. Ford*