Filed 9/20/23  Post Modern Justice Media Project v. Wood CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| POST MODERN JUSTICE MEDIA PROJECT, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> ANDREA C. WOOD, <br><br>     Defendant and Respondent. | A167086 <br><br> (Contra Costa County <br>   Super. Ct. No. <br>   MSC21-02564) |

Plaintiff Post Modern Justice Media Project (Post Modern) appeals from a default judgment awarding Post Modern $3,066 on its complaint against defendant and respondent Andrea C. Wood.  Post Modern contends the trial court should have awarded $366,432 as well as specific performance of the contract.  Post Modern's arguments have no merit, and we will affirm the judgment.

I.  FACTS AND PROCEDURAL HISTORY

A.  Post Modern's Complaint

In December 2021, Post Modern filed a verified complaint against Wood and Doe defendants for breach of contract, breach of the covenant of good faith and fair dealing, and fraud.  The complaint alleged as follows.

Post Modern is an educational nonprofit organization founded in May 2020 by its president, Alexander C. Baker.  Wood is a "beneficiary and/or trustee to the Gary W. Wood Charitable Family Trust" (Family Trust).  Wood

1

told Baker that she had the authority to direct "her share" of an annual distribution from the Family Trust to the nonprofit of her choice. From year to year, the distribution varied between $30,000 and $80,000.

Around October 1, 2020, Wood and Baker agreed orally that Wood would direct her share of the Family Trust distribution to Post Modern, for three years, to produce educational media. On or about October 11, 2020, however, Baker informed Wood that Post Modern had not yet obtained "501(c)(3) status" and another nonprofit—NCIR-Fund—would accept the Family Trust funds for tax year 2020. (See 26 U.S.C. § 501(c)(3).) Wood and Baker agreed orally that Post Modern could direct the Family Trust distribution to the nonprofit of Baker's choice, with a "first right of refusal" for tax years 2020, 2021, and 2022.

On October 12, 2020, a document entitled "Irrevocable Pledge Agreement" (NCIR-Fund Pledge) was signed by Wood "on behalf of" the Family Trust (Donor), and by Fred Sottile on behalf of NCIR-Fund (Donee). The NCIR-Fund Pledge stated: "Donor hereby irrevocably pledges and agrees to pay in U.S. dollars to Donee [her] annual amount of the Gary W. Wood Charitable Family Trust for the annual 2020 distribution, which will pay in January 2021."[1] In the document, Wood represented that she was trustee of the Family Trust and had "authority, on an annual basis in December of each year, to direct said trust to pay to the charitable organization of her choice." It stated that the parties intended the agreement and pledge to be

---

[1] The printed language in the NCIR-Fund Pledge stated that the Donor pledged to pay "the total annual amount" of the distribution; in the signed copy of the pledge, the words "the total" were interlineated and the handwritten word "her" was added, suggesting that Wood would direct only her share of the Family Trust distribution. A similar change was made to the pledge agreement that Wood signed the next day in favor of Post Modern.

"enforceable in contract and supported by due consideration." Further, Wood acknowledged that "Donee will rely on the availability of this Pledge to fund its future budgetary, programming and planning needs and will expend time, money and effort to promote its agenda, programming and planning and will make representations to potential donors and other charitable participants to encourage them to expend their time and resources in connection with Donee's efforts, all in reliance on and in consideration of the Pledge and its fulfillment by Donor." Neither Post Modern nor Baker were mentioned in the NCIR-Fund Pledge.

On October 13, 2020, another document entitled "Irrevocable Pledge Agreement" (Post Modern Pledge) was signed by Wood "on behalf of" the Family Trust (Donor) and by Baker on behalf of Post Modern (Donee). The Post Modern Pledge stated: "Donor hereby irrevocably pledges and agrees to pay in U.S. dollars to Donee [her part of] the total annual amount of the Gary W. Wood Charitable Family Trust each year for two (2) consecutive years, beginning with the distribution for tax year 2021 (which will be paid in January 2022); (hereafter 'Pledge'), and ending after distribution for tax year 2022 (which will be paid in January 2023)." Like the NCIR-Fund Pledge, the Post Modern Pledge recited Wood's authority to direct the money and the parties' intention that the pledge "be enforceable in contract and supported by due consideration." As to reliance, the Post Modern Pledge stated that the "Pledge set forth herein constitutes a 'charitable donation' " under 26 U.S.C. section 501(c)(3) and was "made for good and valuable consideration, of benefit to Donor, and is intended to induce reliance and action on the part of Donee." (Bolding removed.)

The Post Modern Pledge also gave Baker a right of first refusal, stating as follows: "All other provisions notwithstanding, beginning immediately

3

upon execution of this Agreement [October 13, 2020], and terminating automatically only upon completion of this Agreement by all Parties, Alexander C. Baker shall enjoy a First Right of Refusal regarding any proposed Donees of the Gary W. Wood Family Charitable Trust. Until this Agreement is completed by all Parties, no charitable organization may receive any donations from Andrea C. Wood's portion of the Gary W. Wood Family Charitable Trust without the express, written permission of [Post Modern], by and through its president, Alexander C. Baker."

According to Post Modern's 2021 complaint, even though the NCIR-Fund Pledge and the Post Modern Pledge were signed on different days by different Donees and did not refer to one another, the parties understood the documents to comprise a single three-year deal under which Post Modern or its designee would receive Wood's portion of the Family Trust distribution on an annual basis for tax years 2020, 2021, and 2022.

In November or December 2020, allegedly in reliance on the pledge agreement with Wood, Post Modern purchased equipment forf producing media content, including a Sony AX43 Camera, three lighting kits, two external hard drives, a teleprompter, and an iPad. Baker and Sotille spent at least 100 hours writing material and promised roles to actors. Baker announced that Post Modern had been pledged money, which led to other donations.

The time for Wood to direct Family Trust funds to NCIR-Fund under the NCIR-Fund Pledge passed in December 2020, and no payment was made in January 2021. Either Wood did not direct the Family Trust to pay anyone or directed the funds to someone else. In February 2021, Post Modern was recognized as a tax-exempt nonprofit retroactive to April 20, 2020.

4

Post Modern filed its complaint in December 2021, before the deadlines for Post Modern to receive funds from the Family Trust for tax years 2021 and 2022. The complaint was signed and verified in November 2021, before Wood's deadline to direct the Family Trust to pay Post Modern for those tax years. Nevertheless, Post Modern alleged it was "harmed in the amount of the total value of the contract, not less than $90,000, plus the reasonably foreseeable consequential damages, not less than $250,000." The prayer of its complaint sought contract damages "not less than $90,000," consequential damages (including lost charitable donations, lost revenues, lost time, and damage to reputation) of "not less than $250,000," restitution of expenses incurred in reliance on the contract, punitive damages, costs, and attorney fees as allowed by contract and by statute for fraud, malice or oppression.

B. Wood's Motion and Entry of Default

In February 2022, Wood filed a document entitled "Lack of Jurisdiction," contending she did not reside or work in the county and that "Contra Costa County has **no jurisdiction** over" her. (Capitalization removed and bolding in original.)

In March 2022, Post Modern filed a motion to strike Wood's "Lack of Jurisdiction" filing, a request for judicial notice, and a request for entry of default. Post Modern argued that the "Lack of Jurisdiction" filing was not a responsive pleading, was not served on Post Modern, and was untimely, its assertions of Wood's nonresidency were false, Wood did not deny living in California, and Wood was properly served with the summons and complaint. Post Modern therefore requested entry of default against Wood for failing to timely file a responsive pleading.

The record does not contain an order granting Post Modern's motion to strike Wood's "Lack of Jurisdiction" filing or otherwise ruling on Wood's

5

filing.  A default was entered against Wood by the court clerk on April 4, 2022.

C.  <u>Wood's Additional Court Filings</u>

At a case management conference on April 29, 2022, the trial court set a default judgment prove-up hearing for June 8, 2022.  The prove-up hearing was later continued to July 29, 2022, due to the court's unavailability on June 8.

Meanwhile—after the default was entered but before the prove-up hearing—Wood filed numerous documents asserting she was not properly before the court and the judge assigned to the case should recuse herself.  The first of these documents, filed on April 28, 2022, was entitled "LACK OF JURISDICTION [¶] LAW OF MINIMUM CONTACTS [¶] IMPROPER SERVICE [¶] LAWSUIT AGAINST JUDGE, 2021-2022."  Wood asserted that she did not live in California, she was not properly served, and "Contra Costa County has no jurisdiction over" her.  She further stated that she "previously [in] 2021 submitted in Federal Court against the individual Judge Maier in this case, who thus must recuse her biased self."  Wood contended that "Judge Maier was served a year ago by process served by hand with personal service to her office," and "[b]ias is both clear and evident."  On May 27, 2022, Wood filed a document asserting, among other things, that the judge had made "intentional unlawful rulings" against her and "intentionally refused to **recuse** herself from legal cases with [her], thus committing Judicial stalking."  (Bolding in original.)  Wood filed similar documents on June 8, June 9, and July 11, 2022.  On July 14, 2022, she filed a "MOTION FOR HEARING TO REOPEN CASE [¶] WOOD HAS FILED AN ACTIVE FEDERAL LAWSUIT AGAINST CLARE MAIER, ORIGINALLY INITIATED IN JUNE 2020 [¶] BIASED JUDGE REFUSES TO RECUSE HERSELF,

6

JUDICIALLY NOTICEABLE [¶] NOTICE OF NEVADA LAWSUIT
[¶] DETRIMENTAL RELIANCE."[2]

### D. Default Judgment

The record does not contain a CIV-100 form requesting entry of a default judgment, as required by rule 3.1800 of the California Rules of Court. The CIV-100 form filed earlier by Post Modern requested only a default, and it did not set forth specific amounts sought for damages, attorney fees, or other relief.

Post Modern did file a memorandum of points and authorities and declarations from Baker, Christine Black, Mark Andrews, and Post Modern's attorney, with attached exhibits. Baker's declaration reiterated much of the allegations of Post Modern's complaint, adding some details: in 2020, Baker and Wood came up with an idea for a web show to be called "Court of Public Opinion," akin to a "Judge Judy" show; in September 2020, Black contacted him regarding possibly donating to the show's production; in early November 2020, Black and a man named Bill Sardi were going to donate $200,000 to create the show; in mid-November to mid-December 2020, Baker purchased video equipment and related items; and in December 2020, Baker cast Mark Andrews as the show's master of ceremonies. Attached to Baker's declaration was an exhibit setting forth the equipment he purchased in the amount of $7,367.

---

[2] The appellate record does not contain any rulings on these filings. Wood has not cross-appealed to raise any issue regarding the absence of these rulings or to challenge the default judgment. To the extent her filings in the trial court requested recusal by the judge deciding the case, the record does not show service as required by statute. (Code Civ. Proc., § 170.3, subd. (c)(1).) Wood also filed a motion in the trial court for a 45-day extension so her new attorney (Vincent Wood) could become familiar with the case, but she later withdrew it.

Black confirmed in her declaration that she and Sardi agreed in a December 2020 phone call to donate $200,000, but they changed their minds after learning from Baker in January 2021 that Wood had backed out of her agreement to fund the show.  Andrews confirmed that Baker offered him the master of ceremonies role.

At the prove-up hearing on July 29, 2022, Baker, Andrews, and Black were called as witnesses and examined by the court.  No transcript, settled statement, or summary of this testimony appears in the appellate record.  By minute order, the trial court ruled:  "The court, having carefully considered the pleadings, exhibits and testimony of the aforementioned witnesses, finds default judgment for plaintiff and against defendant as follows:  [¶] Principal: $2,456.00 [¶] Costs:  $610.00 [¶] Total Judgment:  $3,066[.]00."  (Capitalization omitted.)  No explanation was given for these amounts.

On August 3, 2022, Post Modern filed a request for statement of decision.  The record does not show a ruling on the request.

On August 23, 2022, the trial court entered a default judgment pursuant to its ruling on July 29, 2022.  Post Modern timely appealed.

## II.  DISCUSSION

Post Modern contends the trial court should have awarded "Benefit of the Bargain damages" of $90,000, reliance damages of $7,367, consequential damages of $200,000, attorney fees and costs of $68,915, and specific performance compelling Wood to provide the funds from the Family Trust.  Post Modern's contentions are meritless.

The record does not contain any statement explaining how or why the trial court came up with an award of $2,456 in damages and $610 in costs.  Post Modern does not venture a guess.  Post Modern, however, has "the burden . . . to demonstrate, on the basis of the record presented to the

8

appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Despite this burden, Post Modern provided no transcript or settled statement of the prove-up hearing even though "the absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court." (*Id.* at p. 608.) As a result, although a defaulting party is deemed to have admitted all well-pleaded factual allegations of the complaint, "the [default] judgment must be *conclusively presumed correct* as to *all evidence matters*." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics in original.) Because we must presume "that the unreported [transcript] would demonstrate the absence of error," we find that substantial evidence supports the conclusion that Post Modern was not entitled to anything more than what it received from the trial court. (*Ibid.*)

A. <u>Benefit of the Bargain Damages</u>

Post Modern contends it was entitled to at least $90,000 under its contract with Wood, because Wood said the distribution from the Family Trust had been at least $30,000 per year in the past, and Wood had agreed to provide funds for three years. But Post Modern had to "prove that [it was] entitled to" those damages. (*Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 302.) As explained below, substantial evidence supports the trial court's conclusion that it failed to do so.

First, the Post Modern Pledge states that it is governed "by the laws of the State of Nevada." Post Modern does not even try to establish its entitlement to benefit of the bargain damages under Nevada law.

Second, depending on how the pledge agreements are read, the Donor

9

and signatory on the pledge documents was either the Family Trust or Wood "on behalf of" the Family Trust. Although Wood is the one who purportedly failed to direct Family Trust funds to the donees, Post Modern does not explain how Wood might be held personally liable in contract under an agreement she signed in a representative capacity. (See Civ. Code, § 2343.)

Third, Post Modern is not entitled to recover anything for the tax year 2020 pledge, because that pledge was made to NCIR-Fund; Post Modern was neither a signatory to the NCIR-Fund Pledge nor identified as the Donee. Attempting to escape this problem, Post Modern argues that the two pledge agreements should be read as one three-year contract between Post Modern and Wood, because the Post Modern Pledge states that "*the Pledge* will be due and payable to [Post Modern] from that time [when Post Modern obtains 501(c)(3) status] until the completion of this contract." (Italics added.) The argument is untenable. Post Modern obtained section 501(c)(3) status in February 2021, and although the status was retroactive to April 2020, the "Pledge" was defined in the Post Modern Pledge as pertaining to the funds for tax year *2021*—not the tax year covered by the NCIR-Fund Pledge (2020). In any event, whether there were two separate pledge agreements or one overarching contract in favor of Post Modern, the fact remains that the documentation for tax year 2020 promised the money to NCIR-Fund, not Post Modern.[3]

---

[3] Post Modern also points to language in the Post Modern Pledge that purported to give Baker a right of first refusal. But that language only allowed Baker to *block* money going to other charities, not to usurp it for Post Modern. While the complaint alleged that Wood had agreed orally that Post Modern could direct the Family Trust distribution to the nonprofit of Baker's choice, the NCIR-Fund Pledge agreement stated that it *superseded* any previous oral agreements related to that pledge. Furthermore, the right of first refusal in the Post Modern Pledge could not pertain to funds that Wood

Fourth, Post Modern failed to allege a breach of contract as to Post Modern. The only allegation of breach in the complaint is Wood's failure to pay funds in tax year 2020 to NCIR-Fund—not Post Modern. As to tax year 2021, there is no allegation that any benefit from the Family Trust was *available* for Wood to direct to a donee; without funds for Wood to direct, the fact that Post Modern did not receive funds would not be the result of any breach by Wood. Regarding tax year 2022, Wood could not be liable for a breach of any obligation to direct funds to Post Modern because that obligation did not come due until December 2022, long after the complaint was filed and the default judgment was entered. Without an adequate allegation of breach, benefit of the bargain damages could not be awarded for breach of contract.[4]

Fifth, Post Modern failed to establish it is entitled to recover any amount of damage under a benefit of the bargain theory. As mentioned, for tax year 2020, the funds were to be received by NCIR-Fund rather than Post Modern, and as for tax year 2022, Post Modern had no recoverable damages because there was no obligation yet due. More importantly, as to all three tax years, there was no evidence of the amount (if any) Wood received from

had already promised to NCIR-Fund, if—as Post Modern contends—the NCIR-Fund Pledge was a binding agreement.

[4] A pledge agreement is generally not enforceable as a contract without consideration. (*University of Southern California v. Bryson* (1929) 103 Cal.App. 39, 48; Civ. Code, § 1605.) Contrary to Post Modern's argument, the pledge agreements' conclusory recitals that they were "supported by due consideration" and language that Wood received a "psychic reward" are not sufficient. We assume, without deciding, that there was consideration because Post Modern unconditionally obligated itself to create multimedia educational content, or that Wood is estopped from denying the existence of consideration due to Post Modern's detrimental reliance on her promises. (See *University of Southern California v. Bryson,* at p. 48.)

the Family Trust.  Although the complaint alleged that in past years the trust benefit had been at least $30,000, that is insufficient to show the actual amount of Wood's share that she could have directed in tax years 2020, 2021, or 2022.

Finally, we must presume that the unreported transcript of the prove-up hearing would have demonstrated that the trial court did not err in denying benefit of the bargain damages.  (*Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)  Accordingly, Post Modern did not prove its entitlement to benefit of the bargain damages.

B.  <u>Reliance Damages</u>

Post Modern contends it is entitled to reliance damages of $7,367, because it spent that amount for equipment in reliance on Wood's pledge.  (Citing *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 93 [contract damages may be measured by non-breaching party's expenditures in fulfilling the contract]; see *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225–231 [promissory estoppel].)  The trial court, however, only awarded Post Modern one-third of that amount.  Once again, Post Modern fails to demonstrate error.

A reasonable inference from the record is that the trial court concluded Post Modern was entitled to reliance damages on some legal theory and awarded one-third of the amount Post Modern requested.  On appeal, we indulge every reasonable inference from the evidence and presume that the judgment is correct.  (*Clawson v. Board of Registered Nursing* (2021) 72 Cal.App.5th 996, 1002.)  The burden is on Post Modern to affirmatively demonstrate error by showing there is no substantial evidence to support the judgment.  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549, 564.)  And because Post Modern provided no transcript of the prove-up hearing, we must

12

"conclusively presume[]" that the default judgment is "*correct* as to *all evidentiary matters*." (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992, italics in original.)

Here, the trial court could have concluded that one-third of the amount requested for the equipment was appropriate because the equipment was for Post Modern *and NCIR-Fund* to produce educational material over a three-year period: for the first of those years, NCIR-Fund was going to create material and would use the equipment. Furthermore, the court could have found that the equipment had a value to Post Modern and/or Baker beyond what would be used to create the media called for by the pledge agreements, that not all of the equipment was actually needed, that the purported cost of the equipment was not sufficiently supported by the evidence (the record contains no receipts), that Post Modern did not mitigate its damages, or that Post Modern could recoup some of its expenditures by selling the equipment. The exact basis of the trial court's calculations is not for us to decide. The point is that Post Modern has not shown that any of these potential inferences from the evidence would be improper or unreasonable. Indeed, we must presume otherwise in the absence of a transcript of the prove-up hearing. (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.) Post Modern therefore fails to demonstrate that limiting recovery to $2,456 was not supported by substantial evidence.[5]

C. <u>Consequential Damages</u>

Post Modern urges that it should recover $200,000 based on testimony from Baker and Black that Black and Sardi intended to donate $200,000 until they found out that Wood had not followed through on her pledge. Post

---

[5]     Nevertheless, we strongly encourage trial courts to set forth the basis for their calculation of damages to facilitate appellate review.

13

Modern points to language in the pledge agreements warning that the Donee would make representations to potential donors in reliance on the pledges, arguing that it was reasonable for Wood to foresee Post Modern obtaining other donors based on her pledges.

Post Modern's argument is unavailing. While Black and Baker stated in their declarations that a $200,000 donation was intended, there was no confirming documentation or testimony from Sardi (who died before the hearing), and the trial court was not obligated to believe the testimony of Black and Baker. In fact, while Black and Sardi supposedly decided to donate in December 2020, no donation had been made by the time Wood backed out. And while Black claimed she decided not to make the donation in January 2021, no specific allegation of the loss of that $200,000 donation found its way into Post Modern's December 2021 complaint. We defer to the trial court's evaluation of the credibility of the witnesses. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) Post Modern has not shown that a $200,000 donation would have been made but for Wood's failure to provide funds from the Family Trust.

D. <u>Attorney Fees and Costs</u>

Post Modern's Pledge agreement provides: "If any dispute arises between Parties requiring litigation to enforce this Agreement, Parties agree that the Party deemed prevailing Party shall be entitled to recover from the non-prevailing Party reasonable attorney fees incurred." Attempting to recover under this provision, Post Modern's attorney submitted to the trial court a declaration and spreadsheet documenting his fees up to May 25, 2022 (76.7 hours at $400/hour for $30,680).[6]

---

[6] In addition, on April 5, 2023, Post Modern's attorney filed in *this* court a declaration dated February 10, 2023—over five months after entry of the

14

The trial court did not err in refusing to award attorney fees. In the first place, Post Modern could not recover those fees because it did not seek them in a specified amount in its request for a default. (*Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479 ["a party seeking entry of a default judgment must apply for all of the relief sought—including attorney fees—when application is made for entry of default"]; see Cal. Rules of Court, rule 3.1800; see also Cal. Rules of Court, rule 1.31(a)–(c); Gov. Code, § 68511.) Furthermore, while the Post Modern Pledge included an attorney fees provision, the NCIR-Fund Pledge did not, and Post Modern did not present evidence to apportion the fees between the two or argue why apportionment was unnecessary.

Post Modern also sought recovery of costs for the initial filing fee ($435), service of the complaint ($150), a process server for its motion to strike ($150), and a process server for the entry of default ($150). A prevailing party may be entitled to recover for its initial filing fee and service of the summons and complaint, but Post Modern provides no authority or argument that it should have recovered anything more than the $585 it sought for those two items, or that it should have recovered for other items. The trial court awarded $610. Post Modern fails to establish error.

---

default judgment—telling us that "[he] incurred" an additional $37,350 in fees responding to Wood's motions and papers filed after she was in default and in prosecuting the appeal. Post Modern asks us to award that amount as well. However, Post Modern cannot challenge the trial court's default judgment based on evidence not presented to the trial court, for fees incurred after the default judgment, or for fees incurred but not claimed when seeking the default judgment. Further, fee requests must first be addressed in the trial court, not here.

E.  Specific Performance

Post Modern argues that the trial court should have compelled Wood to "take all steps necessary to direct her share of the Gary W. Wood Charitable Family Trust payable to Post Modern Justice Media Project for every tax year until the Judgment Amount plus accrued interest is paid in full."  We disagree.

A court may award specific performance as a remedy for breach of contract if, among other things, the contract is sufficiently definite, consideration is adequate, and the plaintiff's legal remedy is inadequate. (*Union Oil Co. of California v. Greka Energy Corp.* (2008) 165 Cal.App.4th 129, 134.)  Post Modern argues that its legal remedy is inadequate because Wood's house in Orinda was sold at a foreclosure auction and Wood has no real estate left.

Post Modern, however, did not seek specific performance in its complaint, and it does not explain how it could obtain that remedy without seeking it.  Furthermore, it did not adequately allege a breach by Wood for failing to direct Family Trust funds to Post Modern, or facts from which it could be inferred that Wood was unable to afford the $3,066 judgment imposed by the trial court.  Post Modern has not demonstrated error in the judgment.

## III.  DISPOSITION

The judgment is affirmed.

16

_____

CHOU, J.

We concur.

_____

JACKSON, P. J.

_____

BURNS, J.

*Post Modern Justice Media Project v. Wood* / A167086

17