Filed 5/22/25  Autolino v. Thomas CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CHARLENE CONCEPCION AUTOLINO, | D083390 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00048931-CU-HR-SC) |
| KEITH THOMAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Keith Thomas, in pro. per., for Defendant and Appellant.

Charlene Concepcion Autolino, in pro. per., for Plaintiff and Respondent.

Keith Thomas appeals a civil harassment restraining order entered against him for the protection of Charlene Concepcion Autolino.  He argues the order is not supported by substantial evidence.  We disagree.  Hence we affirm.

## I.
## Background

On November 13, 2023, Autolino filed in the superior court a request for a civil harassment restraining order. The following facts are taken from her declaration in support of her request. She worked "in the field of reentry" and was the chair and a longtime member of the executive committee of the San Diego Reentry Roundtable. In 2008 she served as PACT[1] coordinator for the Chula Vista Police Department. In that capacity she met with parolees, and one of those parolees was Thomas. When she noticed one day that he had a gun in his backpack, she reported him to law enforcement agents and he was arrested. He was placed in Patton State Hospital after having been found incompetent to stand trial. After about a year and a half, his case was tried. During the course of the trial, he fired three public defenders and ultimately represented himself, including in cross-examining Autolino after she had "testified against him." Ultimately he was convicted and incarcerated.

In October 2020, Autolino received a call from an employee of the district attorney's office, who said Thomas was requesting her home address in order that she might be served with papers relating to a claim that she had testified falsely against him.

Then, on March 9, 2023, a month after Thomas had been released from prison, she received a call on her cell phone from an unidentified caller. The unidentified caller asked her several questions about the Rock Church and the San Diego Reentry Roundtable. When she inquired as to his identity, he

---

[1]     PACT appears to be a program that serves parolees reentering society.

responded, "Keith Thomas." Autolino responded by referring him to some unspecified resources. Then she "contacted parole" and, within two hours, "Agent Nathan Galbraith had [Thomas] sign a 'no contact order' in addition to his conditions of parole." "At that point [Autolino] was extremely fearful that [Thomas] was going to try to locate [her] as now he had [her] cell phone number."

Later the same year, on November 5, Autolino received a notification on her cell phone indicating that Thomas had requested to follow her on Instagram. "This was clearly in violation of the 'no contact order,'" so she "immediately contacted Agent Galbraith." Days later, "parole communicated that Mr. Thomas . . . [had been taken] back into custody" and that, "during their search of his phone[,] they found screenshots" of Autolino and "a lot of information . . . about" her.

For the hearing on Autolino's request for a restraining order, Thomas was produced from custody. Little is known of what happened at the hearing because the record on appeal includes no transcript of the hearing; nor does it include any objections to Autolino's declaration. It does, however, include two orders that were entered at the end of the hearing: (1) a minute order indicating that Autolino and Thomas each testified at the hearing; and (2) a restraining order against Thomas for the protection of Autolino.

After the restraining order issued, Thomas timely appealed.

3

## II.
## Discussion

**A.    Code of Civil Procedure Section 527.6**

Section 527.6 of the Code of Civil Procedure[2] governs civil harassment restraining orders.  It permits a person who "has suffered harassment" to seek injunctive relief for their protection.  (§ 527.6, subd. (a)(1).)

One form of harassment that warrants imposition of a restraining order is "a knowing and willful . . . course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose."  (§ 527.6, subd. (b)(2).)  A second such form of harassment is "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).)  For this latter form of harassment to warrant imposition of a restraining order, it must be of a sort that "would cause a reasonable person to suffer substantial emotional distress," and it must "actually cause substantial emotional distress to the petitioner."  (*Ibid.*)

As can be seen, each of these two types of harassment is premised on the existence of a "course of conduct."  (§ 527.6, subd. (b)(2) & (3).)  To qualify as a "course of conduct" within the meaning of section 527.6, activity must amount to "a pattern of conduct composed of a series of acts over a period of time . . . evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means" (§ 527.6, subd. (b)(1)), and it must not be constitutionally protected.  (*Ibid.*)

---

[2]    All further statutory references are to the Code of Civil Procedure.

4

A trial court from which relief is sought under section 527.6 may enter a temporary restraining order to provide short-term relief.  (*Id.*, subds. (d) & (f).)  Before it can enter a restraining order providing *longer*-term relief, it must conduct a hearing at which it "shall receive any testimony that is relevant, and may [also] make an independent inquiry."  (*Id.*, subd. (i).)  Following such a hearing, "[i]f the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."  (*Ibid.*)

## B.     Standard of Review

When a court of appeal "review[s] a [trial court's] finding that a fact has been proved by clear and convincing evidence, the question before [it] is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true."  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see also *id.* at p. 1009 ["the question . . . is not whether the appellate court itself regards the evidence as clear and convincing; [rather,] it is whether a reasonable trier of fact could have regarded the evidence as satisfying this standard of proof"].)  "Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below[,] . . . giv[ing] due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence."  (*Id.* at p. 996.)

## C.     Analysis

As noted *ante*, Thomas contends the restraining order at issue here should be reversed because it is not supported by substantial evidence.  But this argument suffers from a fundamental defect inasmuch as the absence of a hearing transcript renders the record fatally incomplete.  " 'When a finding

of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*," such that "an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [observing that appellant's "[f]ailure to provide an adequate record on an issue" is "fatal" inasmuch as it "requires that the issue be resolved against [him]," and cataloging "numerous situations" in which "appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided"]; see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.)  This failure of proof defeats Thomas's argument that the order is not supported by substantial evidence.

## III.

### Disposition

The judgment is affirmed. Autolino is entitled to costs on appeal.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.

7