Filed 12/22/25  Thang v. Thang CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AH JUNG YIN THANG et al., | B342406 |
| Plaintiffs and Respondents, | Los Angeles County Super. Ct. Nos. |
| v. | 21STCV30526, 22STCV02161 |
| LEVI SAP NEI THANG et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court, Los Angeles County, Stephen I. Goorvitch, Judge. Affirmed.

Rutan & Tucker and Proud Usahacharoenporn for Defendants and Appellants.

Thaler Law and Jesse J. Thaler for Plaintiffs and Respondents.

Defendants Levi Sap Nei Thang and a group of related limited liability companies appeal a judgment rendered on a statement of decision after a bench trial.[1]  The trial court found defendants liable for negligent misrepresentation and intentional fraud based on representations Thang made to 21 individual plaintiffs to solicit their investments in certain oil and gas leases and related assets.  Defendants contend (a) the judgment on the negligent misrepresentation claim should be reversed because plaintiffs failed to prove defendants owed them a legal duty in connection with the transaction; (b) the judgment on the negligent misrepresentation claim should be reversed because the claim is barred by the economic loss rule; (c) the evidence was insufficient to support the judgment on both the negligent misrepresentation and intentional fraud claims; and (d) the evidence was insufficient to support alter ego liability against the entity defendants.

We conclude defendants have failed to establish error with respect to the intentional fraud claim.  Because the fraud claim independently supports the judgment, we need not address defendants' contentions regarding the negligent misrepresentation claim.  Further, although defendants challenge the alter ego determination, they do not address the trial court's primary ground for holding the entity defendants liable as *direct* participants in the fraudulent scheme.  We affirm.

---

[1]     Thang is the sole owner and employee of the limited liability companies.  We refer to the companies as "entity defendants."

2

## PRINCIPLES OF APPELLATE REVIEW

"The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error." (*Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 833, citing *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This includes the presumption " 'that the record contains evidence to support every finding of fact.' " (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) "[T]he burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson*, at p. 609; accord *Denham*, at p. 564.) Thus, " 'an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived.' " (*In re Marriage of Fink*, at p. 887.)

Before turning to the underlying facts, we must emphasize that defendants have failed to provide a reporter's transcript of the trial proceedings and testimony. Accordingly, the only record we have of this evidence is the summary set forth in the trial court's statement of decision. "Where no reporter's transcript has been provided . . . it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Estate of Fain*), citing *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153–154.) "The effect

3

of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain,* at p. 992, citing *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386; *National Secretarial Service, Inc. v. Froehlick* (1989) 210 Cal.App.3d 510, 521–522.) In accordance with these principles, we draw our recitation of the facts from the court's statement of decision and presume the evidence was sufficient to support every factual finding stated in it.

## BACKGROUND

The parties waived jury trial and tried the negligent misrepresentation and intentional fraud claims to the court.[2] Defendant Thang and all 21 plaintiffs testified. The court found defendants liable on both claims based on the following evidence.[3]

---

[2] The parties entered into a stipulation of facts; however, defendants have failed to include the stipulation in their appellant's appendix. While the court accepted the stipulation, it clarified that it would have reached "the same decision even if it disregarded the parties' stipulation of fact because Plaintiffs testified to the dispositive facts contained within the stipulation."

[3] Defendants filed objections to the trial court's proposed statement of decision. Most of these objections disputed only the evidentiary bases for the court's factual findings. As we have discussed, because defendants have failed to provide a reporter's transcript, we must presume the unreported testimony supports every factual finding that the trial court made. (See *Estate of Fain, supra,* 75 Cal.App.4th at p. 992.) Apart from the evidentiary disputes, defendants' objections largely focused on their contention that plaintiffs could not have reasonably relied on oral representations that purportedly contradicted the express terms of the parties' written contracts. We address this issue

4

Plaintiffs testified that defendant Thang solicited their investments in oil leases, which she represented would be drilled and operated by her younger brother. Thang, by contrast, testified that she was selling land that may or may not contain oil, and that plaintiffs misunderstood the nature of the transaction. Each plaintiff's testimony was consistent in establishing that they were Burmese immigrants with limited English proficiency, that Thang was a known figure in the Burmese-American community, and that plaintiffs learned of the investment opportunity through Thang's Facebook posts and livestreams. Plaintiffs uniformly believed they were investing in oil leases, and testified that Thang held herself out as an expert in oil and gas, described the leases as high-quality, and assured them that her brother would operate the wells if they lacked sufficient funds, with costs to be repaid from oil profits. No wells were drilled or operated, plaintiffs received no profits, and none of their funds were returned. Plaintiffs further testified that Thang deleted all relevant Facebook content after they filed suit. Several witnesses stated that Thang claimed she was selling the leases at cost to help impoverished Burmese immigrants become wealthy, and that they relied on her representations due to their inability to understand the written contracts. Many were familiar with Thang because of her purported charitable donations to disaster relief efforts in Burma.

The court expressly found plaintiffs were credible and Thang was not. The statement of decision explains: "The Court finds that Plaintiffs testified credibly. Plaintiffs testified

_____

when we discuss defendants' appellate arguments regarding the reasonable reliance element of plaintiffs' fraud claim.

5

consistently with each other, and the Court had an opportunity to observe their manner of testifying and body language, which support the Court's credibility determination. Conversely, the Court found that Levi Sap Nei Thang did not testify credibly. The Court believed Plaintiffs' testimony concerning Thang's representations. Moreover, Thang's testimony demonstrated that some of her representations to Plaintiffs were false. For example, Plaintiffs testified that Thang claimed to have extensive experience in the oil and gas industry, and Thang's testimony belied those representations. The Court also bases its adverse credibility determination against Thang [on] having observed her testimony during the trial."

The court found plaintiffs had met their burden to prove "Thang made several material misrepresentations, any one of which would support the Court's judgment in this case." Those misrepresentations were (a) "Thang misrepresented her qualifications and experience in the oil and gas industry," including claiming "to have strong expertise and extensive experience in the oil and gas industry over the course of many years"; (b) "Thang misrepresented that she would assist the investors and would 'take care of everything,' " including promising that "her younger brother would handle the drilling and operation of the oil wells; Plaintiffs could pay the costs after they harvested and sold the oil; and Thang's brother's work would create a passive stream of income for the investors"; (c) "Thang misrepresented the quality and profitability of the leases," including "definitive statements concerning the quality of the oil leases and the existence of oil on the land"; and (d) "Thang misrepresented the nature of the investments to Plaintiffs." The court found "Thang knew her misrepresentations

6

were false" and plaintiffs "reasonably relied on these misrepresentations, which gave rise to their damages." In sum, the court found: "Thang acquired the leases and 'dumped' them on Plaintiffs by misrepresenting her qualifications and experience, as well as the nature and value of the investments. Thang promised to help Plaintiffs drill and operate the oil wells. Once she sold the leases and took Plaintiffs' money, she abandoned them in contravention of her promises." In making these findings, the court reiterated that it "credits Plaintiffs' testimony and discredits Thang's testimony."

As for the entity defendants, the court found the companies were liable on both claims "based upon two independent theories." The court explained: "First, the entity defendants were direct participants in the scheme. The entity defendants were referenced in the contracts as contracting parties, and Plaintiffs proved that Levi Sap Nei Thang was their agent for purposes of transacting 'business' with Plaintiffs. Because corporations necessarily act through their agents, they are liable in this case. [¶] Second, in the alternative, the Court finds that the entity defendants were alter egos of Levi Sap Nei Thang."[4]

---

[4] With respect to the alter ego determination, the court found plaintiffs had met their burden to prove circumstances warranting reverse piercing of the corporate veil. Specifically, the court found (a) "the entity defendants have no legitimate business operations and were used exclusively to perpetrate the instant scheme"; (b) "there was a unity of interest and ownership between the entity defendants and Levi Sap Nei Thang, because she was the sole owner and employee of the entities and she used them for her own purposes"; (c) "exempting the entity defendants from liability would permit Levi Sap Nei Thang to shelter assets from this judgment"; (d) "Plaintiffs' funds went to these limited

7

Thang moved for judgment notwithstanding the verdict and a new trial. The court denied the post-trial motions. This appeal followed.

## DISCUSSION

### 1. *The Trial Court's Findings Support the Judgment on the Intentional Fraud Claim*

Defendants contend the evidence was insufficient to establish "key elements" of plaintiffs' intentional fraud claim. As discussed, because they have failed to provide a record of the trial testimony, defendants are effectively precluded from challenging the sufficiency of the evidence to support the trial court's findings, and we must presume that "the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain, supra,* 75 Cal.App.4th at p. 992.) Accordingly, our review is confined to determining whether the court's factual findings were sufficient to support the judgment.

Moreover, our power to reverse the judgment is limited to *prejudicial* errors for which defendants—as appellants—have shown a miscarriage of justice occurred. (Cal. Const., art. VI, § 13 [a reviewing court cannot set aside a judgment "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *People v. Chun* (2009) 45 Cal.4th 1172, 1201 [our state constitution "prohibits a reviewing court from setting aside a judgment due to trial court

---

liability companies based upon Thang's testimony and the fact that the entity defendants were contracting parties, i.e., they held the leases"; and (e) "an injustice would result if the judgment does not include the entity defendants, as Thang could shelter her assets."

error unless it finds the error prejudicial"]; see also Code Civ. Proc., § 475 ["No judgment . . . shall be reversed . . . unless it shall appear from the record that such error . . . was prejudicial, . . . and that a different result would have been probable if such error . . . had not occurred."].)  Prejudice is not presumed.  (Code Civ. Proc., § 475.)  On the contrary, "the appellant bears the burden to show it is reasonably probable he or she would have received a more favorable result at trial had the [purported] error not occurred."  (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308 (*Citizens for Open Government*), citing *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

To prevail on a claim for intentional fraud, a plaintiff must prove "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff."  (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498, italics omitted; accord *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.)

The trial court found defendants knowingly made the following misrepresentations and plaintiffs were damaged due to their reasonable reliance:  (a) "Thang misrepresented her qualifications and experience in the oil and gas industry"; (b) "Thang misrepresented that she would assist the investors and would 'take care of everything' " related to "drilling and

9

operation of the oil wells"; (c) "Thang misrepresented the quality and profitability of the leases," including "definitive statements" concerning "the existence of oil on the land"; and (d) "Thang misrepresented the nature of the investments to Plaintiffs."

Defendants contend the trial court erred in finding that their representations were false, that defendants knew the representations were false when made, that plaintiffs reasonably relied on the representations, and that plaintiffs were harmed as a result. We can easily dispose of the first contention, as defendants rely almost exclusively upon Thang's testimony to show that none of the representations was false.[5] The obvious problem with this approach is the trial court found Thang was *not credible*, and we have no power to second guess the court's credibility determination. Defendants cannot demonstrate that their representations were true by relying on testimony that the trial court found to be false.[6] (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [deference to trial court's credibility

---

[5] With respect to the representations regarding the "nature of the investments," defendants argue there was no misrepresentation because the "Purchase and Sale Agreements that Plaintiffs signed were very clear as to what Plaintiffs were purchasing." The argument is a non sequitur. Regardless of whether the agreements were "very clear," if defendants' statements misrepresented the nature of the investments as set forth in those agreements, then the statements were necessarily false.

[6] As the trial court bluntly put it in denying defendants' post-trial motions, "the court believed the victims and thought that Levi Sap Nei Thang *was lying* during her testimony." (Italics added.)

10

determination mandated for both oral testimony and written affidavits].)

As for the knowledge of falsity element, defendants make largely the same mistake. First, they mischaracterize the trial court's statement of decision by claiming the court found knowledge of falsity only with respect to Thang's promise to assist the investors with operation of the oil wells. This ignores the court's express finding as to *all* of the "several material misrepresentations" that "Thang knew her misrepresentations were false or made the misrepresentations without any reasonable grounds for believing their truth and with reckless disregard for their truth."[7] Moreover, even as to Thang's misrepresentation about assisting with operations, defendants exclusively rely on Thang's declaration in support of their post-trial motions, while again disregarding the trial court's credibility determination. Again, defendants cannot meet their burden to establish reversible error by relying on post-trial evidence from a witness who fabricated her trial testimony.

With respect to reasonable reliance, defendants focus on the false promise to provide assistance with operation of the

---

[7] We note that defendants did not object to the proposed statement of decision on the ground that this finding was ambiguous or that it omitted discussion of particular misrepresentations. Accordingly, we must imply all necessary findings to uphold the judgment with respect to the knowledge of falsity element. (See, e.g., *In re Marriage of Motiska & Ford* (2023) 96 Cal.App.5th 1291, 1300 [where the appellant fails to object to a purported omission in the trial court's statement of decision, the reviewing court "must imply all necessary adverse findings that will support a determination against him on the issue he failed to raise"].)

oil wells and the misrepresentation about the nature of the investment. They argue plaintiffs could not have reasonably relied on these misrepresentations because the contracts were "very clear that Plaintiffs were simply getting leasehold interests in land, and not any drilling or other services." Because, in defendants' telling, the written contracts directly contradict Thang's oral misrepresentations, they contend the misrepresentations are not actionable. (See, e.g., *Kronsberg v. Milton J. Wershow Co.* (1965) 238 Cal.App.2d 170, 176 [a fraud claim is actionable if based on a parol "promise made with no intention of performing" that is "not inconsistent with the writing" and "was the inducing cause" of it, while a claim is not actionable if based on parol promises "which by their very nature are superseded by the final writing" because they are "inconsistent with it"].) The trial court rejected this argument in its order denying defendants' post-trial motions, reasoning there were factual questions that the court had resolved against defendants in finding plaintiffs reasonably relied on Thang's oral misrepresentations. (See, e.g., *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 241 ["The question whether the investors actually or reasonably relied on the representations, in view of their own written representation to the contrary in the purchase agreements, is for the trier of fact."].)

We need not resolve the dispute over plaintiffs' reliance on *these* misrepresentations to affirm the judgment, because the misrepresentations about further assistance and the nature of the investments were not the only misrepresentations that defendants made. As the trial court also correctly recognized in denying defendants' post-trial motions, "there are two other

12

misrepresentations that each support the court's finding that [defendants] engaged in fraud." Because the trial court found the misrepresentations about Thang's "experience in the oil and gas industry" and "the existence of oil on the land" each independently "would support the Court's judgment in this case," defendants cannot establish a prejudicial miscarriage of justice by challenging plaintiffs' reliance on only two of the four misrepresentations that the trial court found to be fraudulent. (See *McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 258 (*McPherson*) [the reviewing court must "affirm a judgment if correct on any ground" put forth in the trial court's statement of decision].)

Finally, defendants argue plaintiffs were not entitled to damages because they "were the cause of their own harm." Here, again, defendants rely on Thang's declaration in support of their post-trial motions, where she purports to recount the admissions of "[n]ineteen out of twenty-one" plaintiffs who supposedly "testified that they did not pay taxes on the properties." As we have repeatedly emphasized, it is defendants' burden as the appellants to provide an adequate record establishing prejudicial error. Defendants failed to provide a reporter's transcript of the trial testimony, and we are in no position to accept the claims of a witness whom the trial court found had fabricated her testimony.[8] Absent an adequate record,

---

[8] Defendants also challenge the amount of damages awarded, pointing (again) to Thang's post-trial declaration about letters that she supposedly received from one of the plaintiffs confirming that defendants cancelled one of his agreements and returned $50,000 of his purchase money. The trial court rejected this argument in its order denying the post-trial motions, explaining: "This evidence was not presented at trial.

13

we are compelled to presume the evidence was sufficient to support the court's finding that plaintiffs were damaged due to their reasonable reliance on each of defendants' misrepresentations. (*Estate of Fain, supra,* 75 Cal.App.4th at p. 992.)

Because defendants' liability for intentional fraud is alone sufficient to support the judgment, we need not address defendants' contentions that the court erred in finding them liable for negligent misrepresentation. (See *McPherson, supra,* 47 Cal.App.5th at p. 258.)

## 2. *Defendants Fail to Address the Entity Defendants' Direct Liability*

Defendants contend the trial court erred in holding the entity defendants liable as alter egos of Thang. Contrary to the trial court's factual findings, they argue the entity defendants "had legitimate business operations" in the "various states" where they were registered as limited liability companies and that "Thang does not own" the entity defendants but "was merely employed as a manager." They also say "half" the income these businesses generated in 2020 "was donated to charity organizations" or "used for legal bills," rather than "for Thang's 'own purposes.'"

Here, again, as with so many of defendants' other arguments, they rely exclusively upon Thang's declaration in support of their post-trial motions to contest the trial court's factual findings. This, as we have now repeatedly emphasized,

---

Regardless, these letters merely demonstrate that [the plaintiff] requested a return of funds, not that he received them. The court credited his testimony at trial that Thang has not returned his funds." The court's ruling was plainly correct.

14

is improper and insufficient to satisfy defendants' appellate burden. Indeed, the trial court correctly rebuked defendants along largely the same lines in denying their post-trial motions, explaining: "Defendants attempt to present *new evidence* disputing [the alter ego] finding . . . [¶] . . . in the form of Thang's declaration. *This is not proper*. Regardless, this new evidence is *not credible*. Thang never disputed ownership at trial. . . . There is no corroboration for Thang's representations and the court disbelieves the contents of this declaration, given *her lack of credibility during trial*." (Italics added.) We reiterate: defendants cannot meet their burden to establish reversible error by relying on post-trial evidence from a witness who fabricated her trial testimony.

There is another problem with defendants' argument that is equally dispositive. In addition to alter ego liability, the trial court also found the entity defendants liable as "direct participants in the scheme." As we have discussed, to meet their burden as appellants defendants must show *prejudicial* error— i.e., that "it is reasonably probable [they] would have received a more favorable result at trial had the [purported] error not occurred." (*Citizens for Open Government, supra,* 205 Cal.App.4th at p. 308; accord *Watson, supra,* 46 Cal.2d at p. 836.) Even if we agreed the entity defendants should not have been held liable as Thang's alter egos, this would have no effect on the trial court's direct liability finding, which stands as an independently sufficient basis to support the judgment against the entity defendants. Because they have not challenged the direct liability finding, defendants cannot establish prejudicial error.

15

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to costs.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, Acting P. J.

We concur:

ADAMS, J.

HANASONO, J.

16